Richardson, Ch. J.,
delivered the opinion of the court:
This case was referred to this court by the following resolution of the Senate:
“In the Senate of the United States,
“February 28,1885.
“Resolved, That the claim of S. S. Webb and Company, for the use of William G-. Ford, as embraced in Senate bill Ho. 2653, in the 48th Congress, be referred (in accordance with the provisions of section 1059 of the Revised Statutes) to the Court of Claims, together with the papers, vouchers, proof, and documents appertaining thereto.”
*491 The following is a copy of the bill mentioned in said resolu-. tion:
“A BILL for tlie relief of S. S. Weblb and Company, for tlie use of William. G. Ford.
uBe it enacted, die., That the claim of S. S. Webb and Company, for the use of William G-. Ford, for the proceeds of fifty bales of cotton, containing twenty-five thousand five hundred and sixty-eight pounds, seized, under the Captured and abandoned property Act, at Mobile, Alabama, in May, eighteen hundred and sixty-five, by Acting Quartermaster Samuel Lappin, and shipped by him on the bark Ada Carter to the chief quartermaster at New York, and sold, and the proceeds paid into the Treasury, be, and the same is hereby, referred to the Court of Claims, to be heard and determined by said court without regard to the lapse of time, and the same as if said claim had been preferred before said court within the two years prescribed by the act of March twelfth, eighteen hundred and sixty-three, entitled ‘An act to provide for the collection of abandoned property, and so forth.’
“ Sec. 2. That the evidence heretofore taken in the case and filed in the Treasury Department, and the evidence and papers on file before Congress, shall be admitted and heard by the court the same as if taken over again under the rules and orders of the court; and either party may take additional testimony, and shall have the right of appeal as in other cases.”
The defendants file a motion to dismiss for want of jurisdiction, urging that there is no legal authority in the Senate to refer a claim to this court.
It will be seen that the claim mentioned in the bill and referred to the court is “ for the proceeds of fifty bales of cotton, containing twenty-five thousand five hundred and sixty-eight pounds, seized, under the Captured and abandoned property Act, at Mobile, Alabama, in May, eighteen hundred and sixty-five, by Acting Quartermaster Samuel Lappin, and shipped by him on the bark Ada Carter to the chief quartermaster at New York, and sold, and the proceeds paid into the Treasury.”
All the rest of the bill is proposed legislation, which is not referred to the court. If by resolution the Senate had referred to the court proposed legislation, we might well hold that it was without authority to do so, and that we took no jurisdiction of such matter under the reference.
But in any case where a claim for money is before Congress there seems to be no reason why either house may net refer it *492 here for adjudication, under the following provision of the Revised Statutes:
“Sec. 1059. The Court of Claims shall have jurisdiction to hear and determine the following matters:
“ First. All claims founded upon any law of Congress,
“ Or upon any regulation of an executive department,
“ Or upon any contract, expressed or implied, with the government of the-United States,
“And all claims which may be referred to it by either house of Congress.”
There would seem to be four distinct classes of cases over which this court may have jurisdiction under that section: Mrst, those founded upon any law of Congress; second, those founded upon any regulation of an executive department; third, those founded upon any contract, expressed or implied, with the government of the United States; and, fourth, all claims which may be referred to it by either house of Congress.. The jurisdiction is equally well established in cases coming under either of the four classes of cases.
There stands prominently in the Revised Statutes the im- • portant enactment that this court shall have jurisdiction of “ all claims referred to it by either house of Congress,” not meaninglessly inserted, and it cannot be argued away by subtleties andreñnement of reasoning, nor be blotted out by other legislation on collateral matters. It is a well-settled rule of construction of statutes that effect must be given, if possible, to every clause, and that none be left without force, unless repealed expressly or by necessary implication clearly indicating such to be the will of Congress. Benedicta est expositio guando res redvmitur a destruetione.
It is urged that Congress has not the constitutional power to authorize one of its houses alone to confer upon a court of law jurisdiction to hear and determine cases; that the power to create jurisdiction is a legislative power, which cannot be delegated. As a general principle that may be correct, but the jurisdiction here conferred is a mere consent that the United States may be sued in cases referred by either house to that court which Congress has established for the purpose of hearing and determining cases against the government. Without their consent the United States cannot be sued, but with it they can be. No one particular form of consent is requisite, and *493 when Congress enacts that the consent is given upon the reference of any case by either of its houses we have no doubt that such is a sufficient consent to support the jurisdiction.
Section 1069 of the Revised Statutes, which prescribes a limitation of six years to certain cases cognizable by the court, is invoked as a cause for dismissing this case for want of jurisdiction.' To that there are several answers:
First. That section seems to refer only to cases which may be commenced by the petition of claimants, and cases “ transmitted to it by the Secretary of the Senate or the Clerk of the House of Representatives, as provided by law.” The only law under which claims may be so transmitted is found in section 1060 of the Revised Statutes, which requires that all petitions and bills praying for the satisfaction of private claims of the classes described, (which are exactly the same as those mentioned in the first part of the first clause of section 1059, and which are brought to the court only at the option of claimants, by voluntary petition,) shall be transmitted by the Secretary of the Senate or Clerk of the House, unless otherwise ordered by resolution. From that section “claims which may be referred to it [this court] by either house of Congress,” under the last clause of the first paragraph of section 1059, are significantly omitted.
There is an important difference between the transmission by the Secretary of the Senate or the Clerk of the House of bills and petitions upon which no action is taken, and referring claims by a formal resolution of the Senate or House of Representatives, and that difference is provided for in the respective sections 3059 and 1060, and is recognized in section 1069.
Second. But if section 1069 does include' claims referred by either house of Congress under section 1059, it is no cause of dismissal for want of jurisdiction on the part of the Senate to refer a ■claim that the resolution shows the cause of action to have first accrued more than six years before such reference, because section 1069 contains exceptions to the term of limitation, under and by virtue of which exceptions the claimant may take his case out of the limitation by allegations and proofs that he was a minor or beyond the seas or under other disabilities therein' set out. For the purpose of trying the issues which may arise under those exceptions, the Senate had jurisdiction to send the case here, and the court has jurisdiction to try the same.
*494 Third. Whatever application, if any, the six years’ limitation in section 1069 may have to other classes of eases referred by one house of Congress, it can have none to this case, where the cause of action arises under the Abandoned and captured property Act, which has a two years’ limitation of its own. (Section 3 of the act of March 12, 1863, 12 Stat. L., 820.) A class of cases made subject to a special provision as to the time within which they must be prosecuted are thereby taken out of the general Statute of Limitations. (Fendall’s Case, 16 C. Cls. R., 120.)
It was suggested at the trial, though neither argued nor pressed, that the first section of the Bowman Act of March 3, 1883 (ch. 116, 22 Stat. L., 485), might operate as a repeal of so much of the Revised Statutes, section 1059, as gives this court jurisdiction of “all claims which may be referred to it by either house of Congress.” That section is as follows :
'•‘■lie it enacted, <&e. [section 1], That whenever a claim or matter is pending before any committee of the Senate or House of Representatives, or before either house of Congress, which involves the investigation and determination of facts, ¿the committee or house may cause the same, with the vouchers, papers, proofs, and documents pertaining thereto, to be transmitted to the Court of Claims of the United States, and the same shall there be proceeded in under such rules as the court may adopt.
“ When the facts shall have been found, the court shall not enter judgment thereon, .but shall report the same to the committee or to the house by which the case was transmitted, for its consideration.”
The act nowhere contains a repealing clause, and if anything is repealed thereby it is by implication arising from inconsistency of its provisions with former statutes. In Sedgwick on Construction of Statutes, &c. (second edition), 97, it is said: “ In regard to the mode in whicMaws may be repealed by subsequent legislation, it is laid down as a rule that a general statute, without negative words, will not repeal the particular provisions of a former one, unless the two acts are irreconcilably inconsistent.” Again, in a note to the above (p. 98): “ Ordinarily express language is used where a repeal is intended, and a repeal by implication is not favored.” “ When acts can be harmonized by a fair and liberal construction it must be done.” “ If possible to reconcile the acts it will be done.” “ The implication of repeal must be a necessary one.” “If two statutes *495 on the same subject can stand together without destroying the evident intent and meaning of the latter one, there will be no repeal.” All of which is supported by authorities there cited.
There is no inconsistency between section 1059 of the Eevised Statutes and the Bowman Act. The two were passed for entirely different objects. By the former the court takes jurisdiction to hear and determine cases on both the facts and the law, enters judgment, with a right reserved to the parties to appeal to the Supreme Court, and with a provision that any final judgment against the claimant shall forever bar any further claim or demand against the United States arising out of the matters involved in the controversy (R. S., § 1093). Such cases involve the trial of legal rights, to be settled judicially and never to be returned to Congress.
It was found that such jurisdiction did not cover all the claims before Congress, and that Congress needed assistance in another class of cases, in which it must itself determine whether or not it would exercise its legislative discretion by giving relief to meritorious parties who had no strict legal rights to stand upon, and which discretion could not properly be conferred elsewhere.
In the history of the court (17 C. Ols. R., 10), published just before the Bowman Act was introduced into Congress, and which was distributed to members of the committees of Congress, it was said:
“There are still numerous claims pressing upon Congress wherein the petitioners appeal for special relief, which the strict rules of law cannot afford them. Claims of this class are increasing and are a source of much embarrassment to both Senators and Representatives. It is uncertainty as to the real facts that gives rise to most of the.difficulty. These Congress, by its committees, cannot investigate and ascertain as they are proved and established in courts of justice. It may and probably will soon become necessary, if it has not already become so, to send such cases to the Court of Claims for findings of fact, to be submittted to Congress for its determination as to the law or the relief which should be applied to them. With the facts judicially determined, Congress would be able to act intelligently, safely, and readily upon the cases presented.”
The Bowman Act follows this suggestion. It is entitled “An act to afford assistance and relief by Congress,” &c., and, so far as Congress is concerned, applies only to the finding of facts. It could not have been intended to increase the business of *496 ■Congress in relation to claims by taking from this court the jurisdiction which it then had over those which either house might refer to it for judicial determination on both facts and law, never again to appear for Congressional action.
The proceedings of the two acts are different. In the Bowman Act no appeal to the Supreme Court is provided for, and if there had been it is not probable that it would have been regarded as of any force, since no judgment is entered in cases under its provisions. (Gordon’s Case, 2 Wall., 561, and 7 C. Cls. R., 1.) .In other respects there are important differences which do not conflict with each other, but relate to different cases or have different courses of proceeding.
The Revised Statutes and the Bowman Act complete a system for the investigation and settlement of all classes of claims, while the system would be inadequate and imperfect under ■either one without the other.
While the bill was pending before Congress not a suggestion of the repeal of any existing provisions was once made by any member in debate, as we can find. Immediately after the passage of the act a copy was printed by the court for the use of the departments, the bar, and others, to which this note was attached, and it has since continued to be attached to the copy printed with its rules:
“ The act of March 3,1883, does not repeal Revised Statutes, ■section 1063, which authorizes the head of a department to transmit to the Court of Claims any cases of the classes of which, by reason of the subject-matter and character, the court ■might take jurisdiction of on the voluntary action of claimants, and which are set forth in Revised Statutes, section 1059.
“Nor does it repeal that provision in section 1059 of the Revised Statutes which gives the court jurisdiction to hear and determine ‘ all claims which may be referred by either house ■of Congress.’
“In all the above-mentioned cases the court has jurisdiction to enter judgment.
“ Care must therefore be taken, in referring to the court cases which might come under either the Revised Statutes or the act of March 3, 1883, to specify under which law the reference is made.” (18 C. Cls. R., xxix, and 20 C. Cls. R., ly.)
In every case referred to the court by either house of Congress or by a department since the passage of that act care has ■been taken to specify whether it was sent under the Revised *497 Statutes or the Bowman Act, and the court has invariably proceeded in accordance with such reference.
In the nineteenth volume of the reports of this court there-are reported five cases transmitted to the court by the head of a department under the provisions of section 1063 of the Revised Statutes, in each of which the court took jurisdiction and rendered judgment.
If the authority of one house of Congress to refer a claim to-this court under 1059 of the Revised Statutes is repealed by implication, so must the authority of the head of a department to transmit cases under 1063 of the Revised Statutes for the latter is much more like section 2 of the Bowman Act than is-section 1059 of the Revised Statutes like section 1 of that act.
To hold that the Bowman Act repeals anything by implication would be “ establishing an incidental and accidental change of the law beyond the contemplation of the legislature,” which is not justifiable, as we held in Wilcox's Case (12 C. Cls. R., 495), which the Supreme Court affirmed, adopting that very language (95 U. S. R., 661).
We must hold, therefore, that, for the purpose of determining whether or not there is a legal liability, we have jurisdiction of any claim referred to the court by either house of Congress, and that the motion to dismiss for want of jurisdiction must be overruled.
The effect of such a reference requires more examination.
The defendants have filed a demurrer, on the ground that no sufficient cause of action is set out in the resolution of reference or in the petition founded upon it.
The claimants contend that the reference conferring jurisdiction upon the court admits a cause of action, or admits that the United States are liable if the facts be proved as alleged. We cannot concur in this view.
The conferring of jurisdiction admits nothing except the consent of the United States to be sued. It creates no new cause of action, and no legal right against’the government except that of making them defendants in a judicial tribunal.
The United States are liable in the first three classes of cases-mentioned in the first paragraph of section 1059 of the Revised Statutes, above cited, not because jurisdiction is thereby conferred on this court to hear and determine such cases, but because the government has always been liable in such cases. *498 No government, so far as we know, denies its liabilities on its ■ own contracts; and the United States, like other governments, have an elaborate system of accounting and provision for paying claims in such cases through the executive departments. That system not being adequate in controverted cases in the opinion of Congress, jurisdiction is conferred upon this court to hear and determine such cases as the claimants see fit to bring here; but no legal rights on the merits which did not exist before are created thereby. Parties are permitted voluntarily to come here to have their legal rights determined, and : so, under the last clause of the paragraph, they may be sent ■ here by either house of Congress to have their legal rights judicially determined, but clothed with no additional and no ad■mitted rights,
This was the view taken of the reference by one house of Congress within the first year of the existence of the court. In an opinion delivered February 5, 1850, by that able jurist Chief Justice Gilchrist, of New Hampshire, the first presiding justice of this court, he said :
“The case does not present a claim founded upon any law of Congress or any regulation of an executive department, or upon any contract, express or implied, with the government of the United States. It comes before us by a resolution of the •House. Our construction of the act constituting this court is ¡that we have no authority to determine that a party has a legal claim against the United States unless it comes within one of the clauses specified, or is founded on a legal right. In the present case our opinion as to the case is that the claimant has no legal cause of action against the United States.”
That language is as applicable now as it was at that time.
The question then presented in this case is whether or not the claim is founded upon any existing legal right. In our ■opinion it is not.
The claim is for the proceeds of fifty bales of cotton seized '.under the Captured and abandoned property Act, sold, and the proceeds paid into the Treasury.
That.the United States are not liable in any form for property ■ seized or captured by the military authorities in time of war ■in enemy’s territory, or for the proceeds thereof in the public Treasury, except as provided in the Captured and abandoned property Act (March 12, 1863, ch. 120, 12 Stat. L., 820), has been decided by the Supreme Court in Klein's Case (13 Wall., 136), *499 Haycraft’s Case (22 Wall., 81), The Intermingled Cotton Cases (92 U. S. R., 653), Lamar’s Case (102 U. S. R., 95), and Young v. United States (97 U. S. R., 58). Bello parta cedunt reipuhliece.
In the Intermingled Cotton Cases (92 U. S. R., 653) the Supreme Court held that the money in the public Treasury from that source was held in trust “ for the benefit of such as should establish their claim to it under the provisions of the Abandoned and. captured property Actand in Hay craft’s Case (22 Wall., 81) the Supreme Court, speaking by Chief Justice Waite, say:
“ In Klein’s Case (13 Wall., 136) the property collected under this act was said to be of ‘ a peculiar description, known only in the recent war, called captured and abandoned property,’ and that ‘ the government recognize to the fullest extent the humane maxims of the modern law of nations which exempts private property of non-combatant enemies from capture as booty of war.’
“‘No similar legislation,’it was also said, ‘is mentioned in history,’ and ‘the government constituted itself the trustee for those who were by that act declared entitled to the proceeds of captured and abandoned property, and for those whom it would thereafter recognize as entitled.’
“And again (p. 139), that ‘ the proceeds of the property have passed into the possession of the government, and the restoration of the property is pledged to none except those who have continually adhered to the government.
“ ‘ Whether restoration will be made to others or confiscation will be enforced is left to be determined by considerations of public policy subsequently to be developed.’”
So in Collie’s (Young’s) Case (97 U. S. B., 61) the Chief Justice said: “As to all persons within the privileges of the act (the Captured and abandoned property Act) the proceeds were held in trust, but as to all others the title of the United States as captor was absolute. Whoever could bring himself within the terms of the trust might sue the United States and recover, but no one else.”
From this it appears that the only persons for whom the government has made itself a trustee are those who by that act [and these words are italicized by the Chief Justice in his opinion] are declared entitled to the proceeds of captured and abandoned property, and those whom it should thereafter recognize as such, to be determined by consideration of public policy subsequently to be developed.
Those declared by said act to be entitled to the proceeds are described as follows in section 3 :
*500 “Any person claiming to have been the owner of any such abandoned or captured property may, at any time within two years after the suppiession of the rebellion, prefer his claim to the proceeds thereof in the Court of Claims; and on proof to the satisfaction of said court of his ownership of said property, of his right to the proceeds thereof, and that he ha,s never given any a.id or comfort to the present rebellion, to receive the residue of such proceeds, after the deduction of any purchase-money which may have been paid, together with the expense of transportation and sale of said property, and any other lawful expenses attending the disposition thereof.”
The claimants did not prefer their claims to this court within two years after the suppression of the rebellion, and so are not of those who are entitled to the proceeds.
Congress has not yet declared any further general policy on the subject nor recognized the present claimants as entitled to such proceeds. The public policy of the government must be declared by Congress, and not by one house acting separately.
As to the balance, $10,512,007.90, remaining in the Treasury from the proceeds of captured and abandoned property, as shown in Hodge's Case (18 0. Ols. It., 704), whether restoration will be made to others or confiscation will be enforced, still remains for the wisdom of Congress to determine, but it cannot be done by one house alone referring isolated cases to this court.
When Congress determines to distribute that balance, it is to be presumed that provision will be made for a pro rata distribution among the numerous claimants who may come in with claims in the aggregate much more than sufficient to cover the whole balance, even if no more be presented than have appeared in cases dismissed by the court for the reason that they were not preferred within the two years’ limitation.
Congress has passed special acts in some instances recognizing the claims of individuals who neglected to prefer them within two years, as in the case of Robert Erwin, by the act of February 5, 1877 (ch. 51, 19 Stat. L., 509). That act did not merely authorize this court to take jurisdiction of the claims of Robert Erwin, but it went further and authorized the court to take jurisdiction of his claims under the provisions of the act of March 12, 1863, entitled “An act to provide for the collection of abandoned property and for the prevention of frauds in insurrectionary districts within the United States,” * * * *501 “ not filed within the time limited by said act.” It was said by the Supreme Court, in the case brought under the act, “The purpose of the statute passed for the relief of the appellant, as is manifest on its face, was to remove the bar of limitation of the Captured and abandoned property Act” (97 U. S. B., 392). As that bar excluded the claimant from the benefit of the act, so its removal brought him within all the other terms of it, acknowledged the liability of the United States to the extent and in the manner set out therein, but no further. This Congress could do, but one house could not, because it created a liability which did not exist at the time of the passage of the relief act.
So in the case of B. M. and S. A. Douglas, referred to the court by the act of June 22,1874. The claim stated in the act ■was “ for payment of cotton seized in March, 1863,” and was “referred to the Court of Claims for its decision according to law and the practice in such cases and proceedings.” The only “ law and practice” in relation to cotton so seized arose under the Captured and abandoned property Act, and any rights which the claimants ever had thereunder had long previously expired. The reference act made no mention of jurisdiction.
This court treated the statute as removing the two years’ limitation, and as reviving the act for the claimants’ benefit, and so stated in its opinion (14 O. Cls. B., 9). That Congress could do so, and one house could not, was evidently understood by the Senate after careful consideration, for having, on April 1, 1874, referred the case to the court by a resolution of its own, it rescinded that resolution on the 6th of the same month, and recalled it from this court, to which a copy had been sent, and then proceeded to pass the bill, which went through, both houses, was signed by the President, and became the act above mentioned.
One house of Congress, under Bev. Suit., § 1059, might, no doubt, refer to this court, for adjudication on the facts and the law, a claim which on its face appeared to be founded on contract or other legal obligation; but if upon the findings of fact it should appear to be a claim in tort for the misfeasance or wrong of public officers, for which the government is never liable (Story on Agency, section 318), the court would be obliged to sustain a demurrer filed by the defendants. But if such a claim were transmitted under the Bowman Act, the court would *502 find the facts only, and. Congress would apply the law or would afford such relief as it might deem best.
This case is referred under Eev. Stat., § 1059, for the judicial determination of both the facts and the law, and for judgment thereon. By the demurrer the facts are admitted, and as to law we hold that there is no legal cause of action.
The demurrer is sustained and the case dismissed.