Janet L. ACKER et al.

v.

The UNITED STATES.

Welma LESHER et al..

v.

The UNITED STATES.

George Joseph ALBERT et al.

v.

The UNITED STATES.

Darry D. ANDREW et al.

v.

The UNITED STATES.

Byron D. ACKERMAN et al.

v.

The UNITED STATES.*

Barbara L. AXTON et al.

v.

The UNITED STATES.**

Nos. 213–78, 399–78, 76–79, 266–79C, 580–79C and 57–80C.

United States Court of Claims.

April 2, 1980.

Stuart Rodney Wolk, New York City, attorney of record, for plaintiffs; Arthur E. Neuman, New York City, of counsel.

John W. Showalter, Washington, D. C., with whom was Asst. Atty. Gen. Alice Daniel, Washington, D. C., for defendant.

Before COWEN, Senior Judge, and NICHOLS and KUNZIG, Judges.

## PLAINTIFFS' AND DEFENDANT'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT

KUNZIG, Judge:

We are presented for the first time in this case with the validity of regulations differentiating between teachers within the Department of Defense Overseas Dependents School System based on point of hire. Plaintiffs here are some 352 present or former teachers in this school system who were hired abroad rather than within the United States. Under the regulations, "local hires" such as plaintiffs are denied various benefits vis-a-vis stateside hires. Plaintiffs claim such a distinction is impermissible under the governing statutes and claim money owed them. Both parties

---

* By order of the court of February 6, 1980, No. 580–79C, *Byron D. Ackerman, et al. v. United States*, was consolidated with Nos. 213–78, 399–78, 76–79 and 266–79C.

** By order of the court of February 29, 1980, No. 57–80C, *Barbara L. Axton, et al. v. United States*, was consolidated with Nos. 213–78, 399–78, 76–79, 266–79C and 580–79C.

moved for summary judgment. For the purposes of this appeal the parties have limited the issues to whether plaintiffs are entitled to living quarters allowance[1] or post differential.[2] For the reasons stated below, we hold that plaintiffs are not entitled to either benefit.

Following World War II, the United States military forces and civilian employees were stationed around the world. In order to meet the educational needs of military and civilian personnel's dependents in these foreign countries, the Overseas Dependents School (ODS) System was established. ODS is administered by the Department of Defense. *See generally, March v. United States,* 506 F.2d 1306 (D.C. Cir. 1974).

Prior to 1959, teachers hired for ODS were subject to the Government's Civil Service laws. Substantial difficulties were encountered, however, in subjecting teachers to those laws. For instance, their pay was calculated on the basis of an annual rate. Since teachers do not work a 12-month year, however, they went without pay during Christmas, Easter and summer vacations—up to three months each year. Moreover, other benefits, such as living quarters allowance, were not available on a satisfactory basis. Nor did their salaries compare with similarly qualified teachers in the United States. *See March v. United States, supra; Crawford v. United States,* 179 Ct.Cl. 128, 376 F.2d 266 (1967) *cert. denied,* 389 U.S. 1041, 88 S.Ct. 781, 19 L.Ed.2d 831 (1968). Thus, in 1959, Congress passed the Overseas Teachers Pay and Personnel Practices Act, Act of July 17, 1959, Pub.L.No. 86–91, 73 Stat. 213 (1959), to remove the inequities and provide an overseas school system comparable to schools in the United States. *March v. United States,* 506 F.2d at 1311–12 (D.C. Cir. 1974).

During the next session, Congress again dealt with inequities existing in the compensation of all overseas employees. Congress enacted the Overseas Differentials and Allowances Act, Act of Sept. 6, 1960, Pub.L.No. 86–707, 74 Stat. 792 (1960), to make uniform the benefits and allowances received by federal employees overseas. *See* S.Rep.No. 1647, 86th Cong., 2d Sess., *reprinted in* 1960 U.S.Code Cong. & Admin. News, p. 3338.

Both the Overseas Differentials and Allowances Act and the Overseas Teachers Pay and Personnel Practices Act gave the President the authority to promulgate regulations defining eligibility for living quarters allowances and post differential. 20 U.S.C. §§ 905, 906 (1976); Pub.L.No. 86–707, 74 Stat. 792 (1960). In turn, the President delegated his authority to the Secretary of State. Exec. Order No. 10903, 26 Fed.Reg. 217 (1961), *reprinted at* 5 U.S.C. § 5921 (1976). The Secretary of State, acting under the authority of both acts, issued the Department of State Standardized Regulations (Government Civilians, Foreign Areas). As applicable here, those regulations were adopted by the Department of Defense Directive No. 1400.13.

Plaintiffs challenge the validity of section 031 of the Standardized Regulations and Department of Defense Instructions 1418.-1(III)(B) and (J). The parties characterize the Standardized Regulations and Department of Defense instructions as essentially differentiating between employees on the basis of point of hire. As a gross generalization, the regulations and instructions grant living quarters allowance and post differential to stateside hires and deny those benefits to local hires such as plaintiffs. Exceptions do exist, however, granting these benefits to those hired abroad (or locally) who would not remain overseas except for their federal employment. Since these employees receive living quarters allowances and post differential, we are not directly concerned with them. Nevertheless, these exceptions only reinforce our conclusion that the regulations are valid.

---

**1.** The Government provides actual living quarters to certain civilian employees overseas or a stipend to allow the employee to pay for comparable housing if the former is unavailable.

**2.** Up to 25 percent extra of an employee's pay may be added on as postdifferential to compensate for harsh overseas conditions.

As this court noted in *Trifunovich v. United States*, 196 Ct.Cl. 301 (1971), the overall effect of the Standardized Regulations is to grant an employee living quarters allowance and post differential depending on whether his federal civilian employment caused his residence abroad, or he was already a permanent resident in the foreign area. *Id.* at 309.[3] We found the Standardized Regulations "entirely consonant with the spirit" of the Overseas Differential and Allowances Act. *Id.* As our explication of the two acts' legislative histories will show, nothing in the Overseas Teachers Pay and Personnel Practices Act detracts from this conclusion.

Plaintiffs' main argument is that Congress, in enacting the Overseas Teachers Act created a special group of civilian employees who should be exempted from the coverage of the subsequent Overseas Differential and Allowances Act. Thus, they contend that overseas teachers are all entitled to living quarters allowance and post differential regardless of their point of hire. The Overseas Teachers Act and its legislative history alone belie that interpretation. In conjunction with the Overseas Differentials and Allowances Act, the argument must be doubly rejected.

The Overseas Teachers Act was clearly designed to alleviate the problems the Department of Defense had encountered in applying Civil Service rules to nine to ten month professional employees. As stated in the House Report:

The purpose of this legislation is to provide a system of personnel administration, for school teachers and certain school officers and other employees of the dependents schools of the Department of Defense in overseas areas, comparable to the type of system found in the majority of the public primary and secondary school jurisdictions in the United States. The proposed system will eliminate many of the difficulties resulting from the present application to such personnel of certain civil service rules and regulations.

H.R.Rep.No. 357, 89th Cong., 1st Sess. (1959), *reprinted in* 1959 U.S.Code Cong. & Admin.News, p. 1783. Similar language appears in the Senate Report. S.Rep.No. 141, 86th Cong., 1st Sess. 2 (1959). *See also March v. United States*, 506 F.2d 1306 (D.C. Cir. 1974); *Crawford v. United States*, 179 Ct.Cl. 128, 376 F.2d 266 (1967) *cert. denied,* 389 U.S. 1041, 88 S.Ct. 781, 19 L.Ed.2d 831 (1968). Moreover, in summarizing the provisions of the Overseas Teachers Act, the House Report states in regard to the benefits in question here:

Provision is made for the furnishing of quarters or a quarters allowance, and for storage of household and personal effects,

---

**3.** The Standardized Regulations read:

031 *United States Citizen Employees*
031.1 QUARTERS ALLOWANCES
031.11 *Employees Recruited in the United States*
  Quarters allowances prescribed in Chapter 100 may be granted to employees who were recruited by the employing government agency in the United States, the Commonwealth of Puerto Rico, the Canal Zone, and the possessions of the United States. In the case of married couples see section 134.13.
031.12 EMPLOYEES RECRUITED OUTSIDE THE UNITED STATES
  Quarters allowances prescribed in Chapter 100 may be granted to employees recruited outside the United States, provided that
  a. the employee's actual place of residence in the place to which the quarters allowance applies at the time of receipt thereof shall be fairly attributable to his/her employment by the United States Government; and

b. prior to appointment, the employee was recruited in the United States, the Commonwealth of Puerto Rico, the Canal Zone, or a possession of the United States, by
(1) the United States Government, including its Armed Forces;
(2) a United States firm, organization, or interest;
(3) an international organization in which the United States Government participates; or
(4) a foreign government;
and had been in substantially continuous employment by such employer under conditions which provided for his/her return transportation to the United States, the Commonwealth of Puerto Rico, the Canal Zone, or a possession of the United States; or
  c. as a condition of employment by a Government agency, the employee was required by that agency to move to another area, in cases specifically authorized by the head of agency.

during summer recess periods for teachers and other school personnel who sign renewal agreements and return to their assignments.at the beginning of the next school year. These allowances, as well as postdifferentials . . . *equal to those granted by law to other civilian employees*, are authorized in accordance with regulations of the Secretary of Defense. [Emphasis added.]

H.R.Rep.No. 357, 89th Cong., 1st Sess. (1959), *reprinted in* 1959 U.S.Code Cong. & Admin.News, pp. 1783, 1785–86. The Senate Report also explains that these benefits are to be provided in accordance with existing law and pursuant to regulations issued by the President.

From its inception then, the Overseas Teachers Act has granted teachers the right to living quarters allowance and post differential on such basis as the President shall prescribe. 20 U.S.C. §§ 905, 906 (1976). *See also* Act of June 26, 1930, Pub.L.No. 445, 46 Stat. 818, ch. 622. No outright grant of such benefits was made.[4] Rather, explicit and implicit limitations were placed upon the award of these benefits. Moreover, the history of the Overseas Teachers Act shows that it was designed to eliminate a particular problem faced by teachers in Government employ, but, otherwise, to keep teachers on a parity with other civilian employees.

Our conclusion is further supported by the subsequent enactment of the Overseas Differentials and Allowances Act.

Congress' purpose in enacting the Overseas Differentials and Allowances Act is again clear from the legislative history. The Senate Report explicitly states that the bill was designed to establish uniformity of benefits to overseas employees regardless of agency. S.Rep.No. 1647, 86th Cong., 2nd Sess. (1960), *reprinted in* 1960 U.S.Code Cong. & Admin.News, p. 3388. Plaintiffs argue that the Overseas Teachers Act controls exclusively their entitlement to benefits. Yet that Act's legislative history clearly shows an intent to provide teachers living quarters allowance and post differential *on the same basis as other employees, supra.* Furthermore, the only intent Congress showed in enacting the Overseas Teachers Act was to eliminate the Civil Service law problems and provide pay equivalent to domestic schools—not differentiate between cooks, physicists and teachers on the basic entitlement to compensatory benefits such as living quarters allowance and postdifferential.[5]

Plaintiffs' other argument is that the Standardized Regulations are not consistent with their enabling legislation, the Overseas Differentials and Allowances Act of 1960, 74 Stat. 792, *as amended,* 5 U.S.C. §§ 5921– 25 (1976). Furthermore, the teachers contend that there is no legitimate rationale for distinguishing between overseas employees on the basis of the place they were hired.

The stated purposes of the Overseas Differentials and Allowances Act, *supra,* were

---

4. Plaintiffs argue that the 1959 statute unequivocally provided for allowances to all teachers serving overseas. Thus, they continue, the local hire rule promulgated under the 1960 Overseas Differentials and Allowances Act results in an impermissible *pro tanto* repeal of the earlier act. There is no reason to answer this contention, however, because no inconsistency exists. Section 905(b) of the 1959 Overseas Teachers Act granted teachers "quarters allowance equal to those authorized by the Act of June 26, 1930."

The Act of June 26, 1930, Pub.L.No. 445, 46 Stat. 818, ch. 622, provides that, "under regulations prescribed by the head of the agency concerned," United States citizens "permanently stationed in a foreign country may be furnished [or] granted an allowance for living

quarters." Under this provision, contrary to plaintiffs' argument, the right to quarters is not absolute, but discretionary upon terms and conditions the head of the agency may establish by regulation. The regulations involved in this case, promulgated under the 1960 Overseas Differentials and Allowances Act, are also authorized under the 1930 statute. In short, plaintiffs are wrong in their contention that the 1959 statute unequivocally provided for allowances to all teachers serving overseas.

5. Also, the Overseas Differentials and Allowances Act specifically repealed any inconsistent legislation. Pub.L.No. 86–707, 74 Stat. 792, § 511(b) (1960). Since we do not find the legislation inconsistent, however, we need not rely on this provision.

to strengthen and improve the administration of overseas activities of the United States by

(1) providing a means for more effectively compensating Government employees for extra costs and hardships *incident to their assignment overseas,*

(2) providing for uniform treatment of Government employees stationed overseas to the extent justified by relative conditions of employment,

(3) establishing the basis for the more efficient and equitable administration of the laws compensating Government employees for the extra costs and hardships *incident to their assignment overseas,* and

(4) facilitating for the Government the recruitment and retention of the best qualified personnel for civilian service overseas. [Emphasis added.]

Contrary to plaintiffs' argument, one of the purposes of the Overseas Differential and Allowances Act was to eliminate distinctions between classes of employees as far as benefits for overseas duties were concerned. Moreover, as the emphasized language above shows, the goal of the legislation was to compensate civilian employees for extra costs and hardships which they encountered due to their assignment abroad. In order to achieve this latter goal, the Secretary of State distinguishes between stateside and overseas hires for purposes of eligibility for benefits such as living quarters allowances and post differential. As defendant points out, those teachers hired overseas voluntarily encountered any hardships and extra costs incident to their employment. Thus, they are unlike stateside hires who must be enticed overseas and compensated for their assignment to foreign posts. *See Tyler v. United States,* 220 Ct.Cl. ——, ——, 600 F.2d 786, 787 (1979). Further, those teachers hired overseas are really not *assigned* to a foreign post in the sense their stateside counterpart is assigned. Finally, as we have stated before, this stateside versus foreign hire eligibility requirement "is entirely consonant with the spirit of the law." *Trifunovich v. United States,* 196 Ct.Cl. 301 (1971).

As the Senate Report states, living quarters allowance is to be paid employees "living in a foreign area by reason of his employment by the U.S. Government." S.Rep.No. 1647, 86th Cong., 2nd Sess. (1960), *reprinted in* 1960 U.S.Code Cong. & Admin. News, pp. 3338, 3339. Similarly, post differential is granted to reward "those employees who accept undesirable posts of assignment for long periods." *Id.,* 1960 U.S. Code Cong. & Admin.News at p. 3347. In both cases, the benefits are designed to give something extra to employees who must go overseas. There is no indication that Congress intended to grant people already in those foreign areas extra compensation to give them living situations as though they had come from the United States.

Plaintiffs place considerable reliance on a 1976 Subcommittee Report recommending elimination of the point of hire and recruitment criterion. House Subcommittee on Retirement and Employee Benefits of the Committee on Post Office and Civil Service, 94th Cong., 2d Sess. at 37 (Comm.Print 1976). Congress, however, did not adopt this recommendation. As defendant notes, moreover, the construction of a statute by an agency charged with its administration is given deference and entitled to great weight. *Udall v. Tallman,* 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); *Bowles v. Seminole Rock Co.,* 325 U.S. 410, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945); *Crawford v. United States,* 179 Ct.Cl. 128, 142–43, 376 F.2d 266, 274 (1967), *cert. denied,* 389 U.S. 1041, 88 S.Ct. 781, 19 L.Ed.2d 831 (1968). Moreover, the passage of time increases the assumption that Congress is aware of the agency interpretation of a statute and concurs in it, since no subsequent legislation has altered it. *Benton v. United States,* 203 Ct.Cl. 263, 488 F.2d 1017 (1973); *Alabama v. United States,* 198 Ct.Cl. 683, 461 F.2d 1324, *cert. denied,* 409 U.S. 1023, 93 S.Ct. 464, 34 L.Ed.2d 315 (1972). Here, Congress has allowed these regulations to stand for nearly two decades and has even been presented directly with the issue of their propriety. All told, we can find no support for plaintiffs' position.

Accordingly, after thorough consideration of the parties' submissions and after oral argument, plaintiffs' motions for partial summary judgment are denied, defendant's motion for partial summary judgment is granted and those counts of the petition dealing with post differential and living quarters allowance are dismissed. The case is remanded to the trial division for any further proceedings not inconsistent with this opinion.