**Joseph E. O'HANLON, Jr., et al.**

v.

**The UNITED STATES.**

**No. 450–84C.**

United States Claims Court.

Jan. 10, 1985.

David M. Landay, Pittsburgh, Pa., for plaintiff.

Thomas W. B. Porter, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, Washington, D.C., for defendant. Major Wayne H. Price, Washington, D.C., Office of the Judge Advocate General, Dept. of the Army, of counsel.

### ORDER

YOCK, Judge.

This matter comes before the Court on the plaintiff's Motion for Class Action Certification.

### Facts

The suit was brought by the plaintiff, Joseph E. O'Hanlon, Jr., as an Army reserve officer, formerly assigned as an in-

structor with the 2073 United States Army Reserve School (USAR School), Pittsburgh, Pennsylvania, from September 1978 to August 31, 1981.

During his initial service with the USAR School, the plaintiff was classified as a member of the Selected Ready Reserve in training/pay Category A. Under federal law, 10 U.S.C. § 270, Department of Defense regulations, 32 C.F.R. § 101.5, and Department of the Army Regulation No. 140-1, the plaintiff and all of his fellow staff officers and noncommissioned officers in the grades of E-8 and above (fellow reserve instructors) at the USAR School were required to participate in at least 48 scheduled drills or training assemblies (inactive duty for training (IDT)) per year and to serve on active duty for training for not less than 14 days per year. The plaintiff and his fellow reserve instructors received pay and retirement point credit for each of these 48 scheduled drills.

From the beginning of his service with the USAR School, the plaintiff and his fellow reserve instructors were allegedly required by order of the then Commandant, Col. Robert L. Reese, to attend two additional training assemblies per month, termed "administrative drills." The plaintiff and the aforesaid reserve instructors were not paid for their attendance at these administrative drills.

Under federal law, a reservist is entitled to be paid for each regular period of instruction or period of appropriate duty in which he is engaged for at least two hours, 37 U.S.C. § 206, and he may be given additional training or other duty without pay only with his consent. 37 U.S.C. § 1002. Under Army regulations, nonpay training status is defined as the status of those reservists who voluntarily participate in training or related activity, without pay, for retirement credit only. Army Regulation No. 140-1.

The plaintiff claims that, as a result of both his civilian employment and his allegedly involuntary attendance at the USAR School's unpaid administrative drills, a considerable strain was placed on his professional and private life. He, therefore, sought a meeting with the USAR School's Commandant, Colonel Reese, on August 30, 1981. At this meeting, the plaintiff refused to continue to attend the unpaid mandatory administrative drills. According to the plaintiff, at this meeting, Colonel Reese coerced him into relinquishing his assignment with the USAR School and transferred him to the control of the Reserve Components Personnel and Administration Center (RCPAC), effective August 31, 1981, as a member of the Individual Ready Reserve. As a member of the Individual Ready Reserve, he may voluntarily elect to complete correspondence courses, without pay, for retirement credit.

The plaintiff alleges that his involuntary transfer from the Selected Ready Reserve to the Individual Ready Reserve was in violation of both federal law, 10 U.S.C. § 1163, and the applicable regulations of the Department of Defense, 32 C.F.R. § 100.5, which provide that a member of the Selected Ready Reserve cannot be involuntarily transferred to the Individual Ready Reserve unless a Board of Officers is convened to consider the circumstances and to make such a recommendation.

The plaintiff's complaint basically alleges two "counts." The first "count" requests this Court to enter judgment reinstating the plaintiff in the Selected Ready Reserve and allowing him the reserve duty pay and allowances due an officer in the grade of major, participating in 48 IDT assemblies per year, from August 31, 1981, to the present. The plaintiff's second "count" requests that the Court enter judgment for both the plaintiff and his fellow reserve instructors for the reserve duty pay and allowances attendant to their respective ranks for their attendance at all additional inactive duty administrative drills for which they were not compensated.

In accordance with the second count of his complaint, the plaintiff has now moved this Court to certify this case as a class action, pursuant to RUSCC 23, and to designate him as the class representative. The defendant filed a brief in opposition to

such certification, and the plaintiff filed a reply.

### Discussion

■ The certification of class actions in this Court is governed by RUSCC 23, which states:

A motion to certify a class action shall be filed with the complaint and comply with Rule 3(c), with service to be made as provided in Rule 4. The court shall determine in each case whether a class action may be maintained and under what terms and conditions.

Although the Rule provides no criteria for determining when a class action should be certified, the case history leading to promulgation of the Rule in this Court makes clear that the device is reserved for extraordinary cases and is generally disfavored. *See Kominers v. United States,* 3 Cl.Ct. 684 (1983); *Cooke v. United States,* 1 Cl.Ct. 695 (1983); *Crone v. United States,* 210 Ct.Cl. 499, 538 F.2d 875 (1976); *Clincher v. United States,* 205 Ct.Cl. 8, 499 F.2d 1250 (1974), *cert. denied,* 420 U.S. 991, 95 S.Ct. 1427, 43 L.Ed.2d 672 (1975); *Quinault Allottee Association v. United States,* 197 Ct.Cl. 134, 453 F.2d 1272 (1972).

■ While the current version of RUSCC 23 contains no express standards for determining when a class action should be certified, this Court agrees with its predecessor court, the U.S. Court of Claims, that the proper criteria continue to be those expressed in *Quinault Allottee Association v. United States, supra,* 197 Ct.Cl. at 140–41, 453 F.2d at 1276.

■ After reviewing all of the evidence which has been presented on this motion, the Court determines that a class action is inappropriate in this case for five principal reasons. First, the plaintiff has alleged two distinct counts in his complaint. The first count relates only to the plaintiff individually in that he requests to be retroactively reinstated as a member of the Selected Ready Reserve from August 31, 1981, and to be paid for all IDT drill assemblies which he would have attended from that date had he been allowed to remain as an instructor at the USAR School. The second count relates to the plaintiff and potentially to the other reserve instructors at the USAR School. The plaintiff, in the second count, requests compensation for himself and for his fellow reserve instructors for any administrative drills which they were forced to attend without pay. Thus, the instant case clearly does not involve the necessary common questions of fact or law which would argue for class action certification. The plaintiff's first count involves no common questions of fact or law, and the second count appears to involve no common questions of fact.

In conceding that a military reservist is not entitled to pay for additional training or duty to which he consents, the plaintiff is forced to argue that, under duress, he and his fellow reserve instructors were required to attend such additional training assemblies. Absent duress, it would appear that the plaintiff or any of his fellow reserve instructors attended any such additional training on a voluntary basis. Duress, however, is a question of fact which must be determined on an individual basis. *See Louisiana-Pacific Corp. v. United States,* 228 Ct.Cl. 363, 656 F.2d 650 (1981); *Christie v. United States,* 207 Ct.Cl. 333, 518 F.2d 584 (1975); *Perlman v. United States,* 203 Ct.Cl. 397, 490 F.2d 928 (1974); *Manzi v. United States,* 198 Ct.Cl. 489 (1972). Thus, the plaintiff's suit lacks the requisite common questions of fact for class certification. If the other reserve instructors felt coerced into involuntarily attending the additional training, the circumstances surrounding such coercion involve different questions of fact for each and every individual reserve instructor.

Second, the number of potential claimants is not sufficiently large as to warrant class action certification. Since the maximum number of potential plaintiffs in regard to the plaintiff's second "count" is limited to 39 persons, this Court believes that the more appropriate procedure would be for any of these potential plaintiffs to join voluntarily as party plaintiffs, pursuant to RUSCC 20(a), if they so desire. This

Court has never expressed any concern nor had any difficulty dealing with cases involving hundreds of party plaintiffs or with single plaintiff "test" cases. *See Bendure v. United States*, 225 Ct.Cl. 573 (1980) (737 claimants); *Acker v. United States*, 223 Ct.Cl. 281, 620 F.2d 802 (352 claimants) (1980). Further, the plaintiff has failed to submit evidence that the alleged violative conduct continued either after he was separated from the USAR School on August 31, 1981, or after other USAR School Commandants succeeded Colonel Reese. As a result, the number of potential plaintiffs could be conceivably even less than 39 persons.

Third, there is little chance of inconsistent adjudications, even if each of the potential plaintiffs would elect to file suit separately, since such suits would all be required to be filed in this Court or in a federal district court under the Tucker Act (if less than $10,000 in money damages is sought). 28 U.S.C. § 1346(a)(2), as amended by the Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, §§ 129, 133(a), 96 Stat. 37. Under the Tucker Act, appeals from all such actions would be heard by the U.S. Court of Appeals for the Federal Circuit, resulting in no danger of a split among the circuits. 28 U.S.C. § 1295(a)(2), (3). *See Cooke v. United States, supra*, 1 Cl.Ct. at 697 n. 1. Furthermore, a disposition of the legal issues in the plaintiff's case would likely be dispositive of the identical legal issues in future litigation under the principle of *stare decisis. Cooke v. United States, supra*, 1 Cl.Ct. at 698.

Fourth, the plaintiff may not adequately represent the interests of the proposed class. The plaintiff argues that he "is ideally suited as the representative of this class because of his high rank of major and because he is one year away from completing the minimum 20 years of military service required for retirement and, hence, is not as likely to be the subject of retaliation by the defendant through the Department of Army." The plaintiff's argument, premised primarily on a perceived intention by the Army to retaliate against anyone voluntarily joining as a party plaintiff, is fatally flawed. Initially, the plaintiff's argument disregards the fact that a number of the senior non-commissioned officers (E–8 and above) at the USAR School are already retirement eligible. Moreover, the plaintiff's argument assumes that the remaining 39 potential class members wish to join as class members under his leadership. However, the plaintiff has apparently been unable to get any of these potential class members, including those who are already retirement eligible, to join in the filing of this suit as of this point. The plaintiff's sole explanation is that the other potential class members are concerned about retaliation. In view of this Court's long experience in handling military pay cases, it finds it difficult to give credence to this perceived concern of retaliation, especially since the offending order was issued by a former Commandant of the USAR School who has long since departed. Also, the plaintiff's significant delay in bringing this action (some three years after he left the USAR School) casts considerable doubt on the vigor and diligence with which he would pursue relief on behalf of the class.

Finally, it is the considered view of this Court that certification of a class action in this case would not serve the interests of justice. Any of the plaintiff's fellow reserve instructors who wish to join this case as parties plaintiff are free to do so under RUSCC 20(a), or they may file their own individual action, if they so choose. Although the plaintiff was unable to persuade even one other of his fellow reservists to join him as a claimant in this action, he now seeks to use the Court's authority to force the whole group into joining his suit using the "opt out" procedures outlined in FRCP 23. This Court has traditionally *rejected* the proposition "that it is necessary or appropriate to bind" potential plaintiffs "who fail to join the suit, or that we should adopt the device ["opt out"] of Rule 23(c)(2), (3) for notice to class members that, unless they request exclusion from the suit by a specified date, the judgment, whether favorable or not, will cover them." *Quinault Allottee Association v.*

*United States, supra,* 197 Ct.Cl. at 141, 453 F.2d at 1276. The "opt out" procedure would seem particularly inappropriate when a solo plaintiff, with unique factual circumstances, attempts to bring the class action procedure into play. Here, the plaintiff has failed to establish sufficient reason for this Court to adopt the class action procedure in this case.

In view of the above discussion, the plaintiff's motion for class action certification and for designation of himself as the class representative is denied. Accordingly, the caption of this case will be corrected to read *Joseph E. O'Hanlon, Jr. v. United States.*

IT IS SO ORDERED.