### INTERMINGLED COTTON CASES.

UNITED STATES *v.* RAYMOND, ASSIGNEE; SAME *v.* KIDD; SAME *v.* COWAN, ADMINISTRATOR; SAME *v.* BRABSTON; SAME *v.* SPEAR; SAME *v.* McLEAN; SAME *v.* COOK; SAME *v.* BATCHELOR; SAME *v.* HAWKINS; SAME *v.* GARDNER, ASSIGNEE; SAME *v.* BODENHEIM, EXECUTRIX.

1. The Court of Claims found that cotton in large quantities captured from the respective owners thereof in Mississippi by the military forces of the United States was subsequently intermingled and stored in a common mass, and then sent forward and sold by the treasury agents in the same intermingled condition, and the proceeds thereof paid into the treasury as a common fund; that court further found as a fact that the cotton of each of the claimants in these suits contributed to and formed a part of the mass so intermingled and sold. Having ascertained the amount of that fund remaining in the treasury after deducting payments theretofore made to other claimants, the number of bales sold to create the fund for which payment had not already been made, and the number of bales contributed by each of the plaintiffs to the common mass, — the court thereupon gave judgment in favor of the plaintiff in each case for a sum which bore the same proportion to the whole fund still on hand that the number of his bales did to the whole number then represented by the fund. *Held,* that the judgment was proper.
2. While the Court of Claims cannot delegate its judicial powers, and must itself hear and determine all causes which come before it for adjudication, no reason exists why it may not use such machinery as courts of more general jurisdiction are accustomed to employ under similar circumstances to aid in their investigations.
3. Where that court in certain cases before it, in which complicated accounts and facts were to be passed upon, referred them to a special commissioner to state the accounts, marshal the assets, and adjust the losses, "so that equal and exact justice should be done to all;" and upon consideration of his report, and after due deliberation, approved it, — *Held,* that the judgments as rendered are the result of the deliberation of the court, and not that of the commissioner alone.

APPEALS from the Court of Claims.

*Mr. Solicitor-General Phillips* and *Mr. Assistant Attorney-General Edwin B. Smith* for the appellants.

*Mr. Joseph Casey* and *Mr. Henry S. Foot*, contra.

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

The facts in these cases, as shown by the records and the findings of the Court of Claims, are as follows: —

During the years 1863, 1864, and 1865, large quantities of cotton were captured by the military forces of the United States and taken from the owners in the State of Mississippi. The identity of the several parcels so captured was destroyed, and the property of each owner could not be traced. A very large quantity was used by the army of the United States for defensive purposes in the vicinity of Vicksburg. Much of it was stolen, destroyed, or otherwise lost. After the surrender of Vicksburg, such as could be found and saved was collected at that place and at Natchez, and afterwards intermingled and stored in a common mass. Subsequently it was sent forward and sold by the treasury agents in the same intermingled condition. The proceeds were paid into the treasury as a common fund produced from the sale of this common mass of unidentified cotton, shipped and received under these circumstances.

The Court of Claims found as a fact that the cotton of each of these several plaintiffs contributed to and formed part of this mass so intermingled and sold. This finding was not based upon evidence specifically tracing the property of each claimant, but upon the assumption that, under the circumstances attending these collections, all cotton started from the place of capture, on the way to Vicksburg or Natchez, in a manner that would naturally carry it into the mass, must be presumed to have gone there, unless it was shown to have been lost or shipped to some other point.

The court, upon this finding, ascertained the amount of the fund remaining in the treasury, after deducting payments theretofore made to other claimants; the number of bales sold to create the fund for which payment had not already been made, and the number of bales contributed by each of these plaintiffs

to the common mass. It then gave judgment in favor of the plaintiff in each case for a sum which bore the same proportion to the whole fund still on hand that the number of his bales did to the whole number then represented by the fund.

From these judgments the United States have appealed.

It is difficult to see how the United States can complain of the judgments that have been rendered in these cases upon the facts as found. The aggregate of the whole is no more than the amount of money in the treasury to the credit of the fund, and which, as we have often decided, is a trust for the benefit of such as should establish their claim to it under the provisions of the Abandoned and Captured Property Act.

Each contributor to a common fund becomes interested in the fund in proportion to his contribution. Each owner of property intermingled with other property of the same kind and value, and stored in a common mass, becomes the owner as tenant in common of an interest in the mass proportionate to his contribution. If loss occurs while the common ownership continues, each owner must sustain his proportionate share.

Here the property of different owners was intermingled in a common mass. There was, therefore, an ownership in common. The Court of Claims, ascertaining that there was likely to be a deficiency in the fund, very properly brought all the several claimants together, and conducted the suits in such a manner as to compel them to litigate with each other. The judgments rendered represent the result of this litigation. The several claimants are satisfied. The time has elapsed within which new claims can be presented against the fund, and, so far as we can discover, substantial justice has been done. The United States have only been made liable for cotton the proceeds of which have been clearly traced into the treasury, and these judgments discharged them from further responsibility on that account.

A portion of the cotton was, after its capture, used for military purposes; but the United States are now charged only with that which was afterwards sold under the provisions of the Abandoned and Captured Property Act, the proceeds being in the treasury, and constituting the fund now under consideration.

The Court of Claims cannot delegate its judicial powers. It

must itself hear and determine all causes which come before it for adjudication; but we see no reason why it may not use such machinery as courts of more general jurisdiction are accustomed to employ under similar circumstances to aid in their investigations. In these cases, complicated accounts and complicated facts were to be passed upon. The court referred them to a special commissioner to state the accounts, marshal the assets, and adjust the losses, " so that equal and exact justice should be done to all." The report of the commissioner, when made, was considered by the court, and, after due deliberation, approved. The court determined the title of the several claimants, and their rights to the proceeds, upon evidence irrespective of the commissioner's report, whenever requested to do so by the claimant or the defendants. We see no error in this. The judgments rendered are the result of the deliberation of the court, and not that of the commissioner alone.

*Judgment in each case affirmed.*

NOTE. — In *United States* v. *Smith,* which was argued at the same time by *Mr. Solicitor-General Phillips* and *Mr. Assistant Attorney-General Edwin B. Smith* for the appellants, and by *Mr. Henry S. Foot* for the appellees, MR. CHIEF JUSTICE WAITE, delivering the opinion of the court, remarked, this case differs only from those just decided, in the fact that it seeks to reach a different fund produced in the same way. All the essential facts are the same.

*Judgment affirmed upon the principles embraced in the opinion just read.*