The QUINAULT ALLOTTEE ASSOCIA-
TION AND INDIVIDUAL ALLOT-
TEES Jennie Boome, et al.

v.

The UNITED STATES

No. 102–71.

United States Court of Claims.

Jan. 21, 1972.

Charles A. Hobbs, Washington, D. C., attorney of record for plaintiffs. Wilkinson, Cragun & Barker, and Charles H. Gibbs, Jr., Washington, D. C., of counsel.

Herbert Pittle, Washington, D. C., with whom was Asst. Atty. Gen. Shiro Kashiwa, for defendant.

Before COWEN, Chief Judge, LARAMORE, Judge, DURFEE, Senior Judge, and DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

## ON PLAINTIFFS' MOTION FOR ORDER PROVIDING FOR GIVING OF NOTICE OF CLASS ACTION

DAVIS, Judge:

The claim made in this petition is for administrative charges which the Government has deducted from the proceeds of sales of timber from individual Indian allotments on the Quinault Reservation in the State of Washington. Under the General Allotment Act of 1887, as amended, 25 U.S.C. §§ 331, et seq., parcels within the Reservation, mainly forest lands, were allotted in trust to individual Indians, the great mass of whom are "noncompetent" (in the Indian sense). The Bureau of Indian Affairs has managed these tracts essentially as a single unit (known as the Quinault Forest), selling timber regularly to logging companies. From the proceeds credited to the allottees' trust accounts, the Bureau has, for many years, deducted an "administrative charge" of 10%. Plaintiffs' position is that this charge is being unlawfully collected, contrary to the General Allotment Act, the Fifth Amendment, and the trust patents, and the affected Indians are entitled to recover (with interest) the total of the deductions within the limitations period.

The petition was filed (on March 15, 1971) in the name of The Quinault Allottee Association and of three individual allottees "on their own behalf and on behalf of all individual allottees of the Quinault Reservation." After answer but before any other significant proceedings, plaintiffs moved for an order making provision for the giving of appropriate notice of the pendency and nature of this action to the allottees of the Quinault Reservation (or their successors) shown on a list supplied by the movants. Characterizing this as a "class action", plaintiffs ask us to invoke procedures parallel to those of Rule 23 of the Federal Rules of Civil Procedure.

We are told (and defendant does not deny) that there are over one thousand Quinault Reservation allottees in the same position as the three individual plaintiffs, the interest of these allottees vary from full ownership of one or more allotments to fractional interests in a single allotment, the legal question raised by the petition as to the Government's liability is common to the entire

group, the claims and defenses of the named individual plaintiffs are typical of the claims and defenses of the group, and the separate claims of many of the individual allottees are very small in amount. The Quinault Allottees Association is an organization of these allottees, numbering now over 530 members. Both the Association and the individual plaintiffs assert that they can and will fairly and adequately protect the interests of the entire group, and they deem all the prerequisites of Rule 23, F.R.C.P., for designation as a class action to have been met. The defendant opposes the motion and sees no power, as well as no need, to characterize or treat this as a class action.

I

We reject, at the outset, the Government's broadside challenge to the power of this court to entertain class actions (apparently of any type or character). Under 28 U.S.C. § 2071 we can prescribe rules for the conduct of our business, just as 28 U.S.C. § 2072 authorizes the promulgation of rules of civil procedure for the district courts. Obviously, Rule 23, F.R.C.P., was within the Supreme Court's mandate to adopt rules of "practice and procedure" for the district courts; the class suit is basically a procedural technique for resolving the claims of many individuals at one time (Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 560 (C.A.2, 1968)), comparable to joinder of multiple parties and intervention. There is no reason why this court cannot use the same device, if it is appropriate. So long as relief is con-

fined to a money judgment (United States v. King, 395 U.S. 1, 3, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969); Glidden Co. v. Zdanok, 370 U.S. 530, 557, 82 S.Ct. 1459, 8 L.Ed.2d 671 (1962), there is nothing in the type of jurisdiction we have, or the fact that claims in this court are normally against the United States, to deprive us of this modern aid to speedier and less repetitious litigation. Congress has limited us to monetary judgments but it has not said or implied that we cannot use new procedural techniques, if we consider them advisable, in deciding whether or not to make monetary awards in fair and efficient fashion. The directive that waiver of sovereign immunity not be read expansively (e.g., United States v. King, 395 U.S. 1, 4, 5, 89 S.Ct. 1501, 23 L.Ed. 2d 52 (1969)) goes to the relief we can award, the subjects we can consider, and the timing of claims, not the intermediate procedural steps we take in cases plainly within our jurisdiction. Long ago, the Supreme Court said that in hearing and determining the causes that come before this court for adjudication "we see no reason why it [the Court of Claims] may not use such machinery as courts of more general jurisdiction are accustomed to employ under similar circumstances to aid in their investigations." United States v. Raymond, 92 U.S. 651, 654, 23 L.Ed. 756 (1875).[1]

Rule 23 F.R.C.P. is applicable to all civil litigation in the district courts even though they have Tucker Act jurisdiction up to $10,000 and unlimited Tort Claims Act jurisdiction. The only decision on the point holds that those courts

---

1. Defendant repeats the ancient but inaccurate shibboleth that this court has no "equity jurisdiction", and then argues that since the class suit was originally a creature of equity we cannot use it. The correct premise is, not that we are without equity jurisdiction, but that we cannot grant nonmonetary equitable relief such as an injunction (United States v. Jones, 131 U.S. 1, 9 S.Ct. 669, 33 L.Ed. 90 (1889)), a declaratory judgment (United States v. King, 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969)), or specific performance. Where the relief is monetary, we can call upon such equitable concepts as rescission and reformation to help us reach the right result. United States v. Milliken Imprinting Co., 202 U.S. 168, 173–174, 26 S.Ct. 572, 50 L.Ed. 980 (1906), confirming on this point, 40 Ct.Cl. 81, 98–99 (1904). If procedural techniques which are the children of equity were forbidden to this court, we could not utilize such common and useful practices as intervention, depositions and discovery, all of which have become integral to our practice.

can entertain class actions pursuant to Rule 23 against the United States under both of those statutes. Northern Natural Gas Co. v. Grounds, 292 F.Supp. 619, 641–644 (D.Kans.1968). Since the district courts' Tucker Act jurisdiction is "concurrent with the Court of Claims" (28 U.S.C. § 1346(a)) and the Tort Claims Act is comparable to the Tucker Act in all respects pertinent to this case (both involve claims against the United States for money only), we can see no distinction between the power of the district courts and of this court to accept class suits against the United States. Indeed, if there were, an unfair inconsistency would be created between claimants asking more than $10,000 and those demanding less.

■ Though we have not adopted a rule akin to Rule 23 nor have we gone as far as that provision permits in binding absent members of a class, this court has acknowledged both that groups of claimants can join together in "class" suits, and that special procedures may be applicable to that category of litigation. Our Rule 221 provides for a smaller filing fee in a case involving less than $500 if "it is not a class case." We have at times envisaged class and representative suits here. Lucking v. United States, 102 Ct.Cl. 233, 239, 243, 245 (1944). In fact, Indian cases have several times been denominated or treated as class actions. An old one is United States v. Old Settlers, 148 U.S. 427, 479–480, 13 S.Ct. 650, 37 L.Ed. 509 (1893). More recent examples are Menominee Tribe of Indians v. United States, 388 F.2d 998, 1000, 179 Ct.Cl. 496, 499 (1967), aff'd, 391 U.S. 404, 88 S.Ct. 1705, 20 L.Ed.2d 697 (1968); Klamath and Modoc Tribes v. United States, 174 Ct.Cl. 483, and Anderson v. United States, 174 Ct.Cl. 483 order of April 24,

1964; Short v. United States, No. 102–63, order of April 15, 1966. See, also, McGhee v. Creek Nation, 122 Ct.Cl. 380, 394, cert. denied, 344 U.S. 856, 73 S.Ct. 91, 97 L.Ed. 665 (1952). Despite the defendant's argument, we have no sufficient reason to question the legality of this practice.[2]

## II

■ Of course, the existence of power in this court to adopt a rule equivalent to Rule 23, F.R.C.P., or without such a rule to borrow those district court provisions in a particular case of our own, does not mean that we must or should do so. We often follow the practice and procedure of the district courts (Love v. United States, 104 F.Supp. 102, 122 Ct. Cl. 144, 149 (1952)), but there is no compulsion; we have departed from the Federal Rules in other aspects, such as discovery. The fact is that, even though present Rule 23 has been in effect since 1966, we have not adopted an analogue or parallel. The practice in class suits (including the prescription of standards for giving actions that characterization) is still flexible and open in this forum.

We have now decided that, for the time being, we will not adopt or promulgate any general rule on the subject, though we shall continue to consider that possibility for the future. Rule 23, particularly the part which contemplates binding absent members of the class, has evoked controversy, and "the jury is not yet in." Wright, Class Actions, 47 F.R. D. 169, 170–71 (1970); see, also, Frankel, Some Preliminary Observations Concerning Civil Rule 23, 43 F.R.D. 39, 43–47, 52; Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 560–561 (C.A.2, 1968). The former Rule 23, replaced in 1966, is no longer considered an acceptable model. *Id.* Above all, the "class suit" is a

---

2. The Government complains that a judgment against the United States must ultimately run in favor of and to the individual claimant, not to a class. But the designation and maintenance of an action as a class suit is not the equivalent of a ruling that the judgment will not run to the separate claimants (if the class is composed of individuals). Several devices are available, some of which have already been used, to insure that, before any person receives his money, he obtain a judgment in the precise amount to which he is entitled.

rainbow concept, merging many shades and forms of multiple claim litigation into one summary phrase. Some of these forms may fit our cases, others not. It may possibly be that not all of the current Rule 23 mechanisms may be needed or apt for this court, or will work efficiently here. Time, experience, and perhaps experiment should precede the jelling of an over-all formula.

We could, of course, refuse to take any steps at all until a general rule is prescribed, but we think the better road to follow, until we are clearer as to the shape of the class-suit needs in this court and the functioning of various class-suit devices, is to proceed on a case-by-case basis, gaining and evaluating experience as we study and decide the class-suit issues presented by individual, concrete cases coming up for resolution. If we ultimately adopt a general rule, it will be in the light of this *ad hoc* experience.

■ In this instance, using some of the Rule 23 criteria, we are satisfied that (i) the Quinault Reservation allottees constitute a large but manageable class, (ii) there is a question of law (the legality of the Government's imposition of the administrative timber charge) common to the whole class, (iii) this common legal issue is a predominant one, overriding any separate factual issues affecting the individual members, (iv) the claims of the present plaintiffs are typical of the claims of the class, (v) the Government has acted on grounds generally applicable to the whole class, (vi) the claims of many allottees are so small that it is doubtful that they would be pursued other than through this case, (vii) the current plaintiffs will fairly

and adequately protect the interests of the class without conflict of interest,[3] and (viii) the prosecution of individual actions by members of the class, some in district courts and some in this court, would create a risk of inconsistent or varying adjudications. In combination, these are good reasons for giving special treatment to this proceeding as a class suit.

■ We are not satisfied, however, that it is necessary or appropriate to bind allottees who fail to join the suit, or that we should adopt the device of Rule 23(c) (2), (3) for notice to class members that, unless they request exclusion from the suit by a specified date, the judgment, whether favorable or not, will cover them. This is not a widely scattered class. Most of the allottees live on or near the Reservation and participate in Quinault tribal affairs. They know about the Quinault Allottee Association, and presumably about this suit (and its companions). Plaintiffs' counsel indicated at oral argument that many who had not joined the Association (about half of the allottees) were wary or suspicious of it, and possibly of the litigation. They are probably not sophisticated in the realm of judicial proceedings. In this situation, we are not disposed to force the remaining individuals in the group to affirmatively elect to stay out of the case if they do not wish to be bound. We believe, rather, that they should be given easy opportunity to appear and to include themselves if they desire the advantages (and are willing to bear the risks and costs) of the suit.

Accordingly, we authorize a notice of the pendency of this action to be sent to

3. In this connection, it is appropriate in a class suit to consider the plaintiffs' attorney (Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 562 (C.A.2, 1968)). Saying that the lawyers here have no agreements with other than the named plaintiffs, defendant invokes 25 U.S.C. §§ 81–82, governing attorneys' contracts with Indian tribes or Indians. It is clear, however, that these provisions have no application to this case because they con-

cern only Indian tribes and individual Indians who are not citizens of the United States; the Quinault allottees are individuals and they are citizens. (This was not true in Cheyenne-Arapaho Tribes v. United States, Nos. 342–70, 343–70, order of March 19, 1971.) It goes without saying that present counsel are "qualified, experienced, and generally able to conduct the proposed litigation." Eisen v. Carlisle & Jacquelin, *supra*.

all Quinault allottees known to plaintiffs (and not already named in the petition). Plaintiffs suggest that this notice be signed and sent by plaintiffs' counsel, and we are willing that this be done. The notice should be dated and describe the litigation and its purpose, including the plaintiffs' general position and also the defendant's general position denying liability. It should inform the recipient that (a) he is believed to be a member of the class of Quinault allottees, (b) if he wishes to be included in the suit, he should sign and file with the Clerk of this court the attached Notice of Appearance within six months of the date of the notice to him, (c) if he files such Notice of Appearance, the judgment in the action, whether favorable or not, will apply to and bind him, (d) if he files the Notice of Appearance, he may be liable for his pro rata share of the costs and expenses of the litigation but need not join the Quinault Allottee Association,[4] and (e) if he does not file the Notice of Appearance by the due date, he will not be bound by an unfavorable judgment in the case, nor will he receive any monetary recovery under a favorable judgment. The notice should also say that the recipient may, if he so desires, enter his appearance through his own counsel by filing a motion for leave to intervene as a plaintiff, and in that event he will be responsible himself for the fees, costs and disbursements resulting therefrom. Finally, the notice should say that neither the sending of the notice pursuant to this court's authorization, nor the filing of the petition, implies that the court has ruled as yet that the Government is liable or that the recipient will be entitled to recover any amount. Attached to the notice should be a Notice of Appearance which can be used by those allottees wishing to enter their appearance.

Counsel for plaintiffs and defendant, together with the Clerk of the court, will endeavor to agree upon the exact form of the notice (and the Notice of Appearance to be attached) and the procedure for distribution. If agreement is reached, the forms should be submitted to the trial commissioner for approval before being sent. If agreement cannot be had, the commissioner shall prescribe the notices and the distribution process.

In addition, we waive the filing of fees (in excess of the $10 already paid) by the allottees who elect to join and appear by the date set in the notice for filing the Notice of Appearance. We do so because we consider this suit as one form of class action and the fee already paid should be adequate for this type of class suit.

Further steps to be taken (with respect to the class nature of the suit) once the class is closed should be prescribed by the commissioner, after consultation with the parties and, where appropriate, the Clerk.

Finally, it is well to note explicitly that nothing we say or hold in this opinion prevents any Quinault allottee (or group of them) from instituting another suit on the same claim through the filing of another petition—if that should be desired.

The plaintiffs' motion for an order providing for the giving of notice of a class action is granted to the extent provided in, and in accordance with, this opinion, and the case is returned to the trial commissioner for further proceedings.

4. To the extent that present plaintiffs are willing to bear these costs and expenses themselves, this provision may be modified or eliminated.