**Salvatore BARBIERI, Jr., et al., Plaintiffs,**

**v.**

**The UNITED STATES, Defendant.**

**No. 153–88 C.**

United States Claims Court.

Nov. 16, 1988.

Cary P. Sklar, Atty. of Record, and Lois G. Williams, Director of Litigation, Nat. Treasury Employees Union, Washington, D.C., for plaintiffs.

Carolyn E. Galbreath, with whom were Asst. Attys. Gen. John R. Bolton, David M. Cohen, and Robert A. Reutershan, Washington, D.C., for defendant.

## OPINION

WIESE, Judge.

In *American Pipe and Construction Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), the Supreme Court ruled that under Federal Rule of Civil Procedure (FRCP) 23, the statute of limitations is tolled on the claim of a putative class member for the period that the question of class certification is awaiting decision before the trial court. The issue we encounter in this case is whether this federal class action rule is equally applicable to suits in the Claims Court. The Government maintains that the rule should not apply and on that ground has moved to dismiss the complaint for a resulting lack of timeliness. Briefs have been submitted and argument has been heard on the question; we decide in plaintiffs' favor.

I

In the spring of 1980, large numbers of Cuban refugees fleeing by boat from Mariel, Cuba, began arriving in the United States at Key West, Florida. To deal with the "Mariel Refugee Crisis," as it later came to be called, the United States Customs Service temporarily assigned additional customs inspectors to assist in the search of the Cuban boats, the processing of refugees, and the enforcement of related immigration laws.

Plaintiffs, customs agents working in Key West, assert that they served as boarding officers during this refugee operation and on that basis claim entitlement to the extra compensation allowed for such services pursuant to 19 U.S.C. §§ 261, 267 (1982). This suit was brought to recover the difference between the amount of overtime pay plaintiffs actually received—they were paid pursuant to 5 U.S.C. § 5541 *et seq.* (1982)—the Federal Employees Pay Act—and the amount of overtime pay they argue they should have received.

Plaintiffs' pursuit of relief dates back to 1980. In the fall of that year, the National Treasury Employees Union (N.T.E.U.) filed a grievance in plaintiffs' behalf pursuant to the collective bargaining agreement in

force between the Customs Service and the N.T.E.U. In the waning months of the limitations period, with the case before the arbitrator still not decided, the union, together with five named individuals, filed a class action complaint in the Claims Court together with a motion for class certification. The complaint alleged that it was being brought in behalf of a class potentially in excess of 80 individuals. None of the thirteen plaintiffs in the present suit were named in the class suit.

On March 11, 1988 the court entered an order denying class certification. The court gave alternative reasons for its decision. First, the order noted that, since the time of filing of the complaint in behalf of over 80 individuals, "it has become evident that we deal with a prospective class of less than half that number. This small group of plaintiffs simply does not warrant resorting to the class action device, particularly if plaintiffs are correct in asserting that the predominant questions of law and fact are common to the entire class. Under such circumstances, use of a 'test case' is a more suitable means of handling the litigation." The order went on to say: "If on the other hand, the claims are factually specific to each class member, as defendant contends, then there is clearly no purpose in granting certification. By certifying a class where separate determinations of factual issues remain necessary, the court endorses a procedure that would not save judicial resources and would only get in the way of an efficient resolution."

Following denial of the motion for class certification, the present plaintiffs brought this suit asserting the same grounds for relief as had appeared in the class action complaint. Indeed, it is not questioned that the present plaintiffs were unnamed members of the class in whose behalf class certification had previously been sought. The problem that faces them now is one of limitations: the present suit was filed on May 4, 1988, nearly eight years after the events in question and thus well beyond the six-year limitations period that is applicable to suits in this court under 28 U.S.C. § 2501 (1982). The action, therefore, is clearly time-barred unless we conclude (as,

in fact, we do) that the running of the limitations period was tolled for the period that the motion for class certification remained pending before the court.

## II

In its decision in *American Pipe*, the Supreme Court said:

> Under the circumstances of this case, where the District Court found that the named plaintiffs asserted claims that were "typical of the claims or defenses of the class" and would "fairly and adequately protect the interests of the class," Rule 23(a)(3), (4), the claimed members of the class stood as parties to the suit until and unless they received notice thereof and chose not to continue. Thus, the commencement of the action satisfied the purpose of the limitation provision as to all those who might subsequently participate in the suit as well as for the named plaintiffs.

414 U.S. at 550–551, 94 S.Ct. at 764–765. The Government, as we have indicated, argues against the application of the foregoing rule to class actions commenced in this court. The argument for this result rests in major part on the differences in wording and procedure between the federal class action rule, Rule 23, and the corresponding rule in this court.

Under the federal rule, once it has been determined that an action may be maintained as a class suit under subdivision (b)(3)—the class category which brings together individual claimants whose separate rights involve common questions of fact or law—the court is required to provide members with a notice advising that they will be (i) excluded from the class upon request made before a specified date, (ii) bound by the judgment where exclusion has not been requested, and (iii) allowed to enter an appearance through counsel of their own choosing if they so desire and exclusion has not been requested. In describing the action established in conformance with this rule, the Supreme Court in *American Pipe* referred to it as "a truly representative suit"—one in which the filing of a timely complaint "commences the action for all

members of the class as subsequently determined." 414 U.S. at 550, 94 S.Ct. at 764.

The Claims Court's class action procedures differ. To start with, our Rule 23 is much less detailed; its main part simply states that "[t]he court shall determine in each case whether a class action may be maintained and under what terms and conditions." Further, under the practice that has prevailed here, the class action device has seldom been used (the preference being for "test" cases), and then only in the framework of an "opt-in" procedure. The "opt-out" procedure provided under FRCP 23 has never found favor in this institution. *Quinault Allottee Ass'n v. United States*, 197 Ct.Cl. 134, 141, 453 F.2d 1272, 1276–77 (1972); *Busby School of Northern Cheyenne Tribe v. United States*, 8 Cl.Ct. 596, 603 (1985); *O'Hanlon v. United States*, 7 Cl.Ct. 204, 206 (1985). Indeed, for a time, our rule specifically provided only for an opt-in class. *Cooke v. United States*, 1 Cl.Ct. 695, 697 (1983).

Given the differences in the class action mechanics here described, the Government says that whereas a class action commenced under FRCP 23(b)(3) is—to repeat the Supreme Court's words—"a truly representative suit," a class action brought in the Claims Court is nothing more than an invitation to joinder—an amalgam of individual actions. Since, in this view of the matter, a claimant is not a member of the class until he has joined in the litigation, the filing here of a class action complaint cannot be viewed as the initiation of a representative suit. There is, therefore, no tolling of the limitations period, except, of course, for those specifically named in the complaint. It is with this reasoning then that the Government argues against the applicability of the rule of *American Pipe* and, simultaneously, for the dismissal of plaintiffs' claims for lack of timeliness.

The argument is not without persuasive force. Indeed, it reflects the reasoning endorsed by some courts when confronted with the same question under the pre–1966 version of Rule 23(b). That earlier version of the rule was akin to our prevailing procedure in that it contained no mechanism for defining the make-up of the class (meaning, those who would be bound by the judgment) save by voluntary joinder (*i.e.*, the opt-in mechanism) thus leading some courts to insist upon individualized satisfaction of the statute of limitations. *Pennsylvania Co. for Insurances v. Deckert*, 123 F.2d 979, 985 (3rd Cir.1941); *Athas v. Day*, 161 F.Supp. 916, 919 (Colo. 1958).

This, however, was not the majority view. Most of the courts that addressed the issue viewed the initiation of a class suit as a representative action—one begun in behalf of all—and hence one which tolled the statute of limitations for every member of the class regardless of when his identity as a class member was established. In explaining this view, the court in *Union Carbide and Carbon Corp. v. Nisley*, 300 F.2d 561 (10th Cir.1961), *pet. cert. dism.*, 371 U.S. 801, 83 S.Ct. 13, 9 L.Ed.2d 46 (1962) put it this way:

> If a class action is maintainable as such, it is incongruous to say that the absent members, who are represented by those present, may not rely upon the commencement of the action by their brethren to toll the running of the statute. This would only serve to "convert the rule into a trap" for those who have expeditiously allowed their rights to be maintained by a class action.

*Id.* at 590 (quoting *York v. Guaranty Trust Co.*, 143 F.2d 503, 529 (2nd Cir.1944), *rev'd on other grounds*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed.2d 79 (1945)). *See also Escott v. Barchris Construction*, 340 F.2d 731 (2nd Cir.1965); *DePinto v. Provident Security Life Ins.*, 323 F.2d 826 (9th Cir. 1963) and *Notes of Advisory Committee to Proposed Rules of Civil Procedure*, reprinted in 39 F.R.D. 69, 99 (1966).

Of the two positions expressed above, we think the wiser course for this court to take is to align itself with the views expressed in *Union Carbide* and *American Pipe;* that is, to view a class action as a representative undertaking the commencement of which tolls the limitations period for all putative members of the class.

Two reasons persuade us to favor this view over the position urged by the Government. First, absent a clear signal to the contrary, litigants should not have to think twice about whether the commencement of a class suit in the Claims Court carries with it substantive connotations that stand at odds with similar litigation brought in the district courts. Granted, our Rule 23 is not detail-specific—we do not say in so many words when a class action may be convened or how its membership shall be determined—but we do spell out our commitment to the Federal Rules of Civil Procedure in unmistakable terms. Rule 1(b) of the Claims Court's rules advises that "[t]he Federal Rules of Civil Procedure applicable to civil actions tried by the court sitting without a jury ... have been incorporated in these rules to the extent that they appropriately can be applied to proceedings in this court." It is not too much to assume that litigants would read this provision to say that, except in cases where our rule of practice may be expressly to the contrary, we will be guided in the interpretation of our rules by that same body of substantive law that also guides the district courts.

However, it is not only concern for procedural fairness that shapes the result we reach. A second appropriate reason for favoring a tolling of the limitations period upon the filing of a class suit is that such a result corresponds with historical practice. Long before the advent of the modern day rules of federal civil procedure, concern for the avoidance of a multiplicity of actions led courts of equity to permit a single litigant, one considered fairly representative of his class, to sue in behalf of others similarly situated. *Smith v. Swormstedt*, 57 U.S. (16 Howard) 137, 14 L.Ed. 942, (1853). In such cases, the original class bill tolled the statute of limitations for all the unnamed members of the class, the rationale being that absent members had an "inchoate" interest in the suit. *Richmond v. Irons*, 121 U.S. 27, 52–54, 7 S.Ct. 788, 799–800, 30 L.Ed. 864 (1887); *Newgass v. Atlantic & D. Ry.*, 72 F. 712 (C.C.E.D.Va. 1894). Given this historical practice, it can hardly be claimed that we break new

ground in now holding that the class action rule in this court contemplates a representative suit the commencement of which tolls the limitations period for all potential members of the class.

The Government argues, however, that even if we are disposed to follow the tolling rule announced in *American Pipe*, we may not do so here for that rule, according to defendant's understanding of it, is confined to situations where class certification has been denied only for lack of numerosity and not for other or additional reasons. And since, in this case, the denial of class certification was based on alternative grounds, the *American Pipe* rule is said to be .inapplicable.

The argument is not convincing. While it is correct to say that the holding in *American Pipe* is addressed only to the specific problem there presented, *i.e.*, a denial of class status for failure to demonstrate the existence of a class too numerous in membership to make joinder practical, we do not understand the rule of the case to be confined to that narrow circumstance alone. Indeed, if the rule were as narrow in its application as the Government claims it to be, then potential class members, as the Court itself noted, "would be induced to file protective motions to intervene or to join in the event that a class was later found unsuitable." 414 U.S. at 553, 94 S.Ct. at 766. In consequence, the utility of the class action device would be largely undermined—a result totally at odds with the essential thrust of the *American Pipe* decision.

For us then, as for other courts, the principle of the case extends well beyond the fact boundaries involved in the decision. *See e.g., McCarthy v. Kleindienst*, 562 F.2d 1269 (D.C.Cir.1977). And that principle, as we see it, is that the initiation of a class suit tolls the applicable limitations period for all potential class members whenever the facts demonstrate a reasonable and good faith basis for believing that the litigation satisfies the prerequisites for class treatment specified in FRCP 23. Thus, while the motion for class certification that was initially brought in this mat-

ter was denied by the court, there was no question that the named plaintiffs had a reasonable basis for asserting that they were members of a class affected by common issues of fact and law, that their claims were typical of the claims of the class and that they would fairly and adequately represent the interests of the class. Hence, the complaint served to toll the limitations period for all potential class members.

■ As a final argument against the application of the *American Pipe* rule, the Government makes the point that the statute of limitations applicable to suits in this court, 28 U.S.C. § 2501 (1982), is a time-limited waiver of sovereign immunity and, as such, must be strictly construed.

Although we quite agree with the Government that governing case law insists upon a strict construction of the court's statute of limitations, *Soriano v. United States,* 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957); *United States v. Sherwood,* 312 U.S. 584, 590, 61 S.Ct. 767, 771, 85 L.Ed. 1058 (1941); *Spannaus v. Department of Justice,* 824 F.2d 52, 55 (D.C.Cir.1987),

> this jurisprudence has no bearing on the issue which confronts us here. Contrary to the Government's view of it, the problem we now deal with does not involve the court's power to "liberalize" the statute of limitations but rather with its power to avoid a multiplicity of suits through a representative action. And that is a question that was long ago settled in the court's favor. *Western Cherokee Indians v. United States,* 27 Ct.Cl. 1, 54 (1891); *aff'd sub nom. United States v. Old Settlers,* 148 U.S. 427, 479–80, 13 S.Ct. 650, 671–672, 37 L.Ed. 509 (1893); *Quinault Allottee Ass'n v. United*

*States,* 197 Ct.Cl. 134, 137–138, 453 F.2d 1272, 1274 (1972).

In the case last cited, the Court of Claims explained:

> [t]he directive that waiver of sovereign immunity not be read expansively (e.g. *United States v. King,* 395 U.S. 1, 4, 5 [89 S.Ct. 1501, 1502, 1503, 23 L.Ed.2d 52] (1969)) goes to the relief we can award, the subjects we can consider, and the timing of claims, not the intermediate procedural steps we take in cases plainly within our jurisdiction. Long ago, the Supreme Court said that in hearing and determining the causes that come before this court for adjudication "we see no reason why it [the Court of Claims] may not use such machinery as courts of more general jurisdiction are accustomed to employ under similar circumstances to aid in their investigations." *United States v. Raymond,* 92 U.S. 651, 654, 23 L.Ed. 756 (1875).

197 Ct.Cl. at 138, 453 F.2d 1272 (footnote omitted). It being clear, therefore, that the court has the power to entertain class actions, we think it follows, from the representative nature of such a suit, that its commencement tolls the running of the statute of limitations for all purported members of the class.

### III

For the reasons stated, the Government's motion to dismiss is denied.