George C. ARMITAGE, et al., for themselves and on behalf of others similarly situated, Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 139–89C.

United States Claims Court.

Oct. 5, 1989.

As Amended Oct. 12, 1989.

---

Ira M. Lechner, Washington, D.C., for plaintiffs.

Stephen J. McHale, with whom were Acting Asst. Atty. Gen. Stuart E. Schiffer and David M. Cohen, Washington, D.C., for defendant.

## ORDER ON MOTION FOR CLASS CERTIFICATION

BRUGGINK, Judge.

This is an action brought by 25 named plaintiffs on behalf of a class of similarly situated persons. The complaint invokes the Back Pay Act, 5 U.S.C. § 5596 (1988), and various other provisions of Title 5 dealing with overtime pay and hours of work. Currently pending is plaintiffs' motion for class certification, which defendant opposes. For the reasons which follow, the motion is denied.

## BACKGROUND

The complaint seeks backpay for two types of premium pay to which federal employees may be entitled. Under 5 U.S.C. § 5542 (1988), employees are entitled to time and a half pay for work in excess of a 40–hour work week or an eight hour work day, whichever is greater. Employees are also entitled to Sunday and holiday premium pay of 25 percent. The issue posed by the complaint is whether hours which are paid but not worked, such as authorized leave, jury duty, or military reserve duty, are to be included in computing the hours of pay upon which such premium pay is based.

In 1987 the Federal Circuit decided a similar issue. It reversed a decision of the United States District Court for the District of Maryland which had denied relief to a group of firefighters seeking backpay. *Lanehart v. Horner*, 818 F.2d 1574 (Fed. Cir.1987), *rev'g* 615 F.Supp. 1300 (D.Md. 1985). The issue posed by the appellate court was whether certain "leave with pay"

provisions of Title 5[1] entitled plaintiffs in that suit to an undiminished amount of overtime pay for a pay period in which authorized leave was taken. The court held that the plaintiffs were entitled to pay at an overtime rate under Title 5, despite the fact that they would not be entitled to overtime pay for the same period under the Fair Labor Standards Act ("FLSA").[2] Specifically, the court held that Title 5 permitted firefighters to be paid at overtime rates based on inclusion of hours not actually worked, but credited because of annual leave, jury duty, etc.

In 1988, the Office of Personnel Management ("OPM") adopted a final rule ordering federal agencies to calculate overtime premium pay for employees (not limited to firefighters) who are "regularly scheduled" to work overtime as if "hours of work" were calculated based on non-work periods (leave, holidays, excused absences). 53 Fed.Reg. 27,147 (codified at 5 C.F.R. § 551.401) (1988)). The rule was not applied retroactively.

Count One of the complaint avers that OPM has either failed to implement, or only implemented in part, the *Lanehart* decision so that plaintiffs have not received overtime premium pay. Count Two of the complaint alleges that plaintiffs have not received Sunday and holiday premium pay because of the same practice of not counting leave time toward "hours worked."

The class of employees which plaintiffs seek to represent is defined as follows:

All persons who are or have been employed by the United States during six years preceding the filing of this complaint,

(A) who have been regularly scheduled to work overtime and who are not exempt from overtime pay but for whom paid periods of non-work were not treated as "hours of work" for purposes of

---

1. 5 U.S.C. §§ 6303, 6307, 6322, and 6323. The four provisions authorize "leave with pay" under certain conditions.

2. 29 U.S.C. §§ 201–219 (1982). The FLSA was made applicable to most federal employees in

1974. Pub.L. No. 93–259 § 6, 88 Stat. 55, 58 (1974). Federal Personnel Letter 551–5 gives the employee covered by the FLSA the benefit of the higher of FLSA overtime or overtime calculated pursuant to Title 5.

computing overtime premium pay and who, therefore, have been deprived by defendant of the full measure of paid leave and holiday compensation as specified in *Lanehart v. Horner,* and/or

(B) who have been regularly scheduled to work Sundays, and/or holidays, but who were not paid such Sunday and/or holiday pay whenever they were on paid leave, and/or did not work on holidays.

Except that excluded from the class are: a) employees in receipt of premium pay on an annual basis for regularly scheduled standby duty;

b) employees in receipt of premium pay on an annual basis for administratively uncontrollable overtime;

c) employees whose pay is fixed and adjusted in accordance with prevailing rates or by a wage board or similar administrative authority; and

d) persons to whom subchapter V of Title 5 is not applicable, as specified by 5 U.S.C. § 5541.

Plaintiffs speculate that the class thus defined includes over 100,000 persons, and that the average claim would be in the range of $500 to $1000.

## DISCUSSION

RUSCC 23 is entitled "Class Actions." The only provision it makes, however, is that "[t]he court shall determine in each case whether a class action may be maintained and under what terms and conditions." While court procedure thus makes allowance for the possibility of a class action, the reality of practice is that the device has been rarely discussed in our cases, and even more rarely utilized. The Claims Court has expressed the view that class actions are "generally disfavored" and reserved for "extraordinary cases." *Busby School of Northern Cheyenne Tribe v. United States,* 8 Cl.Ct. 596, 606 (1985) (quoting *Saunooke v. United States,* 8 Cl.Ct. 327, 328 (1985)); *accord O'Hanlon v. United States,* 7 Cl.Ct. 204, 206 (1985); *Kominers v. United States,* 3 Cl.Ct. 684 (1983). This court's predecessor, the United States Court of Claims, showed a similar reluctance to utilize class actions. *See,*

*e.g., Crone v. United States,* 210 Ct.Cl. 499, 514–17, 538 F.2d 875, 884–86 (1976); *Clincher v. United States,* 205 Ct.Cl. 8, 499 F.2d 1250 (1974), *cert. denied,* 420 U.S. 991, 95 S.Ct. 1427, 43 L.Ed.2d 672 (1976).

While this court has frequently drawn from cases construing Fed.R.Civ.Proc. 23, see *Crone,* at 515, 538 F.2d at 884; *Barbieri v. United States,* 15 Cl.Ct. 747, 751 (1988), the rule remains unique here in at least one respect—neither this court nor its predecessor has recognized class action practice to include an "opt out" class. *See Busby School,* 8 Cl.Ct. at 603. That approach derives in large measure from *Quinault Allottee Ass'n v. United States,* 197 Ct.Cl. 134, 141, 453 F.2d 1272, 1276–77 (1972), a case which continues to strongly influence Rule 23 practice in this court. *See, e.g., Saunooke v. United States,* 8 Cl.Ct. 327, 331–32 (1985); *O'Hanlon,* 7 Cl.Ct. 206, 207; *Kominers,* 3 Cl.Ct. 684.

In *Quinault,* the court permitted use of a class action to hear the claims of approximately 1,000 Quinault Indian allottees. The court enunciated a test in that case which has become a reference for subsequent cases. The test states: 1) The class must be large but manageable; 2) there must be a question of law common to the whole class; 3) the common question of law must predominate over any separate factual issues affecting individual class members; 4) the claims of named plaintiffs must be typical of the class; 5) the Government must have acted on grounds generally applicable to the whole class; 6) the claims of many allottees must be so small that it is doubtful they would otherwise be pursued; 7) the current plaintiffs must adequately and fairly protect the interests of the class without conflicts of interest; 8) the prosecution of individual lawsuits must create a risk of inconsistent or varying adjudications. 197 Ct.Cl. at 134–35, 453 F.2d at 1276.

Defendant raises questions with respect to virtually every one of these criteria. For example, it expresses concern about the lack of certainty of the size of the class, and contends that there is a question about the commonality of the legal issues.

After considering defendant's arguments in light of the filings, the court is persuaded that most of the criteria are met, at least in part.

There is no question that the potential class is large. Whether the group numbers over 100,000, as plaintiffs contend, or is half that number, a threshold of minimal size is exceeded. Whether the class is manageable however, is a matter reserved for the moment.

The court also finds that there is a question of law common to the entire class, namely, whether in determining premium overtime or holiday/Sunday pay, hours of work should include paid but unworked leave time. It would be particularly appropriate to resolve the question of whether the *Lanehart* decision should be given retroactive application. Whether that question predominates over separate issues as to calculation of damages remains.

The court is satisfied that the typicality requirement is met despite the fact that the named plaintiffs are all law enforcement officers. As the court understands the legal issues now framed, the specific jobs and work circumstances would not be determinative, given the limiting conditions placed on the definition of the proposed class.

Based on the plaintiffs' characterizations of the Government's conduct, it would also appear that the Government has acted in a way that is generally applicable to the class. The court notes that this action does not appear to be one which, at least at the liability phase, implicates matters unique to a given employee or job. This would distinguish it, for example, from the typical FLSA overtime pay case in which exemption issues arise.

The criterion that the claims must generally be too small to pursue is more problematic. The outcome depends in part on how the question is asked. If the issue is whether other class members would pursue litigation, then plaintiffs' estimate that the average claim is about $500—$1000 probably satisfies the requirement. Although that amount is not *de minimis*, it is probably insufficient to encourage much individual litigation. The court notes, however, that it would take only a small group of employees, for example in a given installation, to join forces to create a viable action. The more troubling issue, however, is whether it can be assumed that litigation is the only alternative route for non-plaintiffs. This raises the question, dealt with below, of whether a "test case" would be a practical way to assist non-plaintiffs who thereafter pursue an administrative remedy.

With respect to the seventh criterion, that current plaintiffs must adequately protect the interests of the class without conflicts of interest, defendant has not made the court aware of any potential conflict of interest problems, and the court finds none apparent. In addition, plaintiffs are represented by very able counsel. Therefore, the seventh criterion is met.

The issues remaining after this review are the following:

1. Would the class be manageable?

2. Would factual issues predominate over legal issues?

3. Is a class action the only viable way for most putative class members to bring their claim?

4. If a class is not certified, is there a risk of inconsistent adjudications?

The first two questions involve overlapping considerations. For the reasons discussed below, the court finds that, when balanced against the utility of a class action in these circumstances, the class would be unmanageable, and that factual issues would predominate.

There are two points at which managing the class foreseen by plaintiffs becomes problematic—identifying the class and then, if plaintiffs are successful on the merits, implementing relief. The latter task, assuming a large number of employees opted in, would be substantial. Payment would in all likelihood require creation of an elaborate payment procedure similar to the one utilized in *Karamatsu, et al. v. United States*, No. 224–85C (Cl.Ct., filed Apr. 18, 1985), which plaintiffs point to as a potential model. The court notes

initially that use of the class action device was uncontested in *Karamatsu.* Nevertheless, the court acknowledges the useful experience gained by the institution through the class action procedures adopted in that case, and that the problems associated with payout in a large scale personnel action are not insurmountable. The problems attendant upon payout to a large number of people who must still individually demonstrate entitlement does, however, create the risk that the legal inquiries will be dwarfed. Once the legal issues are resolved, the court can be left for an indefinite period in the role of a hybrid personnel agency and bursar for tens of thousands of employees.

Problems of payout alone would not discourage the court from approving a class in this case. Nevertheless, the court is daunted by the combination of that factor with what the court perceives to be significant problems identifying and testing putative class members. The class described by plaintiffs contains four affirmative identifiers and five negative disqualifiers. The class member must be someone:

1. who has been employed by the United States during the last six years;

2. who has been regularly scheduled to work overtime;

3. but who has not been "treated as" exempt from overtime pay;

4. for whom paid periods of non-work were not treated as hours of work for purposes of computing premium overtime pay; and

5. who has either been deprived of:
   a. premium overtime pay
   b. or holiday/Sunday pay, or both;

6. but who is not:
   a. an employee in receipt of annual pay on an annual basis for regularly scheduled standby duty;
   b. an employee in receipt of premium pay on an annual basis for administratively uncontrollable overtime work;
   c. an employee whose pay is fixed and adjusted in accordance with prevailing rates or by a wage board or similar administrative authority; or

d. a person to whom subchapter V of Title 5 is not applicable.

The court appreciates plaintiffs' efforts to be precise. They are necessary. Nevertheless, the above list, which does not even isolate as separate factors the terms "regularly scheduled" and "treated as" exempt, illustrates the potential for improper self-nomination or self-exclusion. Presumably if someone opted in but did not meet all the tests, he or she would be challenged by defendant. The court is persuaded that the process of discovery, notification, identification and challenge would seriously frustrate the prompt resolution of the merits.

These factors distinguish this case from *Quinault.* There the court allowed use of the "opt-in" class, but pointed out the following: "This is not a widely scattered class. Most of the allottees live on or near the Reservation and participate in Quinault tribal affairs. They know about the Quinault Allottee Association, and presumably about this suit (and its companions)." 197 Ct.Cl. 141, 453 F.2d at 1276.

This raises the third question: Is a class action the only viable way for most of the putative class members to bring their claim? The court has already found that a class action is probably the only way that most employees would litigate such a claim. What defendant suggests, however, and what the court considers to be a viable alternative, is use of the present case as a test case, which would be applied by OPM after finality, if liability is ultimately found. The advantages of such an approach are considerable. This action could proceed promptly with a minimum of discovery, and with none of the requirements of class notification and identification. In short, a result could be reached on the merits in significantly less time.

In this regard the present case is distinguishable from cases cited by plaintiffs involving a private defendant. Plaintiffs cite, for example, the decision by the United States Court of Appeals for the Fourth Circuit in *In re A.H. Robins,* 880 F.2d 709 (4th Cir.1989), in which the court questioned the reluctance to use the class action device in mass tort litigation. If a private

defendant loses in a tort action brought by a single plaintiff, it may or may not choose to voluntarily give the benefit of that result to others identically situated. OPM, however, has already expressed a different disposition in the present context. Plaintiffs brought to the court's attention the comments given in connection with OPM's July 19, 1988 Final Rule, which "adopts" the *Lanehart* decision and chooses to extend its application beyond firefighters: "We do not believe it would be prudent to limit the applicability of *Lanehart* to Federal firefighters because the decision of the Court of Appeals for the Federal Circuit makes it clear that the same rationale would apply in the case of any Federal employee who receives additional compensation for overtime work on a 'customary and regular' basis." 53 Fed.Reg. 27,147 (1988). Unlike the relationship between a consumer and a manufacturer, an employee for the Federal government has an ongoing legal relationship with his or her employer which carries with it a well-defined administrative apparatus. This may be why the Court of Claims taught that "[t]he test case, brought by one or a few plaintiffs, has been the traditional method of litigating the rights of Government employees in this court." *Clincher v. United States*, 205 Ct.Cl. 8, 12, 499 F.2d 1250, 1253 (1974), *cert. denied*, 420 U.S. 991, 95 S.Ct. 1427, 43 L.Ed.2d 672 (1976); *see also Kominers*, 3 Cl.Ct. at 685.

The only interest advanced by plaintiffs which cannot be met exclusively through the test case approach is the tolling of the statute of limitations. That is a legitimate concern. However, it is minimized by the fact that any past or present employee may commence a new action, and can, from the outset, join any number of other employees under RUSCC 20(a).[3] This court currently has many backpay cases pending in which thousands of persons are joined as plaintiffs. The desirability of tolling the statute of limitations for potential class members

is in any event outweighed by the negative effects of class designation on the existing lawsuit.

The final question is whether there is a risk of inconsistent adjudications if a class is not designated. That risk is minimal. Individual claims of less than $10,000 can be heard in the various federal district courts. *See* 28 U.S.C. § 1346(a)(2) (1982). As defendant points out, however, appeals from such cases would lie in Federal Circuit, as would appeals from this court. 28 U.S.C. § 1295(a)(2). The risk, therefore, is only temporary.

### CONCLUSION

The motion for class certification is denied. The parties are directed to file their Joint Preliminary Status Report on or before October 27, 1989.

---

3. Two other factors mitigate the effect of the running of the statute of limitations. First, as discussed above, the parties should be able to present the merits issues more promptly if the case does not proceed as a class action. Second, this court has held that the limitations period for putative class members is tolled pending class determination. *Barbieri*, 15 Cl.Ct. at 751–52.