**LAND GRANTORS IN HENDERSON, UNION AND WEBSTER COUNTIES, KENTUCKY and Their Heirs, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 93–648X.

United States Court of Federal Claims.

Dec. 29, 2005.

Mark Stephen Pitt, Wyatt Tarrant & Combs, LLP, Louisville, Kentucky, for plaintiffs, Nancie G. Marzulla, and Roger J. Marzulla, Marzulla & Marzulla, Washington, D.C., Of Counsel.

William James Shapiro, Washington, D.C., for defendant, United States Department of Justice.

## MEMORANDUM OPINION AND ORDER REGARDING RECONSIDERATION OF DECEMBER 23, 1997 ORDER DENYING CLASS ACTION CERTIFICATION

BRADEN, Judge.

On January 12, 1994, a Complaint was filed in the United States Court of Federal Claims, pursuant to jurisdiction conveyed by congressional reference statutes. *See* Complaint at ¶ 1 (citing 28 U.S.C. § 1492 and 28 U.S.C. § 2509(c)); *see also* S. 794. On September 22, 1995, a First Amended Complaint was filed, also invoking jurisdiction under 28 U.S.C. § 1492 and 28 U.S.C. § 2509(c).

On September 22, 1995, Plaintiffs filed a Motion to Certify This Matter as a Class Action. On November 3, 1995, the Government filed an Answer and Opposition. On December 11, 1995, Plaintiffs filed a Reply. On December 23, 1997, the Honorable James F. Merow, then assigned as the Hearing Officer, denied Plaintiffs' Motion as:

> not feasible in this matter ... [as] it is necessary to establish the contemporaneous values of the parcels acquired, to compare the amounts paid, [which] must be accomplished on the basis of evidence addressed to the most profitable uses to which the specific land could probably have been put in the reasonably near future[.] Individual proof as to a claimant's status as a covered individual or heir under the reference is so necessary ... [I]t is not considered that the *Quinault* [*Allottee Ass'n v. United States*, 197 Ct.Cl. 134, 453 F.2d 1272 (1972)] criteria call for a class certification in this matter. Common questions do not predominate to the extent that a class action would be feasible or desirable. Class Action suits are disfavored in the United States Court of Federal Claims litigation.

*Land Grantors v. United States*, No. 93–648X (Cl.Ct. Dec. 23, 1997) Order at 2 (certain internal citations omitted).

On August 15, 2003, this case was reassigned to the undersigned judge. On September 8–10, 2004 and November 23, 2004, a trial was conducted, at which the parties' experts testified and numerous documents were admitted. Subsequently, when the court examined the testimony of the Government's experts in detail and exhibits submitted, it became apparent that the Government had not produced all documents relevant to the scope of S. 794, particularly as to Section 2(2):

Section 2. Reason for Relief.

The individuals described in Section 1 assert that they were . . .

(2) paid less than reasonable value due in part to the refusal of the United States Government to compensate the owners for mineral, oil and gas rights.

*Land Grantors v. United States,* 64 Fed.Cl. 661, 666 (2005) (quoting S. 794, 103d Cong. (1993)). Accordingly, the court requested and the Government produced additional documents to supplement the record, albeit under protest.

On April 1, 2005, the court issued an Interim Report Regarding S. 794 and Memorandum Opinion, wherein the court determined that the 1942–1944 contracts at issue for the sale of land were based on a mutual mistake by the parties that no coal, gas, oil, and other mineral deposits existed under the condemned properties that would support exploration or operations. *See Land Grantors v. United States,* 64 Fed.Cl. at 703–08 (citing RESTATEMENT (SECOND) OF CONTRACTS § 152 (1981)). The court also determined that the former landowners were entitled to restitution from the proceeds of the subsequent sale, lease, or easement of such coal, gas, oil, and other mineral deposits and that the Government's asserted defenses of preclusion, statute of limitations, and laches were inapplicable under the unique and *sui generis* facts of this case. *Id.* at 709–17. Accordingly, the court afforded Plaintiffs the opportunity to file a Second Amended Complaint to conform to the evidence adduced at trial and thereafter. *Id.* at 703. In addition, the parties were requested by a Show Cause Order to brief why the court should not enter a final judgment under 28 U.S.C. § 1491(a) and stay the congressional reference.

On October 3, 2005, a Second Amended Complaint was filed, pursuant to RCFC 15(b), re-listing 1,011 plaintiffs identified in the September 22, 1995 First Amended Complaint, invoking the jurisdiction of the United States Court of Federal Claims under the congressional reference statutes, 28 U.S.C. § 1492 and 28 U.S.C. § 2509, as well as the Tucker Act, 28 U.S.C. § 1491, and conforming the allegations to the evidence adduced at the trial and thereafter. *See* Second Am. Compl. The Second Amended Complaint, however, continued to assert that this case was a class action, despite Judge Merow's December 23, 1997 Order, denying Plaintiffs' Motion to Certify. *Id.* at ¶ 6. Plaintiffs, however, did not request that the court reconsider the bases for the December 23, 1997 Order.

Last month, the Honorable Francis M. Allegra issued an Order in *Barnes v. United States,* 68 Fed.Cl. 492 (2005) that provides a comprehensive analysis of the requirements for class action certification in the United States Court of Federal Claims, in light of the significant revision of RCFC 23 by the United States Court of Federal Claims on May 1, 2002. *See Barnes,* 68 Fed.Cl. at 493–501. Significantly, Judge Allegra concluded, "If the proposition that class actions 'are disfavored' ever was valid, it certainly is no longer so now." *Barnes,* 68 Fed.Cl. at 502.

‧ In this case, since each landowner conveyed title in property, under separate contracts, it would appear that joinder of the parties is not procedurally viable. *See* RCFC 20(a) ("All persons may join in one action as plaintiffs if they assert any right . . . arising out of the *same transaction*[.]") (emphasis added). Instead, certification of a class action may be appropriate, requiring that the December 23, 1997 Order be "altered or amended before final judgment" is entered. *See* RCFC 23(c)(1)(C).

Therefore, the court requests that the parties submit briefs by January 31, 2006 to address whether certification is appropriate in light of the 2002 revision of RCFC 23, the evidence adduced at the trial and thereafter, and the court's ruling that the April 15, 1965

filing of the *Higginson* suit as a class action, even though it was never certified, was sufficient to allow equitable tolling of the statute of limitations. *See Land Grantors,* 64 Fed. Cl. at 714 (citing *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990)). In addition, the court requests a statement of the requirements for class membership and a proposed course of action for meeting the notice requirement of RCFC 23(c). *See, e.g., Barnes,* 68 Fed.Cl. at 502–03.

Finally, the court requests that the law firm of Marzulla & Marzulla, P.A., of Washington, D.C., which filed as Of Counsel for Plaintiffs on the October 3, 2005 Memorandum Order to Show Cause, submit evidence of the ability to serve hereafter as interim and, if a class is certified, as class counsel. *See* RCFC 23(g)(1).[1]

**IT IS SO ORDERED.**

---

1. As the Government correctly observed, "the doctrine of mutual mistake was identified *sua sponte* by the Court for the first time after post-trial briefing has been completed." Oct. 3, 2005 Government's Response to the Court's [April 1, 2005] Show Cause Order. This basis for liability, in large part, only became apparent *after* post-trial briefing was completed when the court required the Government to supplement the record with documents relevant to S. 794 that previously were not produced. Plaintiffs' lead counsel had access to the same information that led the court to conclude that production was not complete, but apparently relied on the court to compel production. After receiving the Government's submissions on April 12, 2005 and May 17, 2005, Plaintiffs' lead counsel again did not follow up on the deficiencies in the production, requiring the court *sua sponte* to issue another order on December 15, 2005. In addition, as discussed herein, in preparing the Final Memorandum Opinion in this case, the court *sua sponte* identified the necessity to reconsider the December 23, 1997 Order regarding class certification.

To date, the court has held Plaintiffs to the less stringent standard of a *pro se* litigant. *See Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980); *see also Ruderer v. United States,* 188 Ct.Cl. 456, 468, 412 F.2d 1285 (1969) (stating that a traditional role of the United States Court of Federal Claims is to examine the record "to see if [a *pro se*] plaintiff has a cause of action somewhere displayed."). At this juncture, however, the court must be able to rely on the diligence and engaged advocacy of counsel with experience before the United States Court of Federal Claims and the United States Court of Appeals for the Federal Circuit, in determining the complex jurisdictional and procedural issues presented in this unique and *sui generis* litigation. *See* RCFC 23(g)(2)(B) ("If more than one adequate applicant seeks appointment as class counsel, the court must appoint the applicant *best able* to represent the interests of the class.") (emphasis added). The court has no objection to Plaintiffs' lead counsel continuing to serve in an "Of Counsel" capacity.